MARY E. BERRETT, *vs.* ROBERT OLIVER, *et al.—December*, 1835.

M, on the 28th November 1832, filed a bill against O, the heirs of B, and the heirs of I, praying that certain deeds, and a decree of the court of Chancery might be vacated. It charged that M, before her marriage with B, was seized in her own right of a valuable estate, and in contemplation of marriage with B, in 1809 conveyed her property to O, in trust for her sole and separate use. That in 1811, doubts being entertained as to the validity of the deed of 1809, in consequence of M and B being both minors at the time of its execution, a second deed was executed, conveying the property to S in trust, to the same uses intended by the deed of 1809. That in 1813, M and B, and S, united in a deed of the property to I, to secure a sum lent by him to M, and to hold the *residue* of the estate for the sole and separate use and control of M. In 1815, M, B, and I filed a bill in Chancery against S and O, in which a decree was passed vacating the said deeds, and vesting the property in I, in trust, to sell a portion thereof for certain specified purposes, and to hold the balance for the separate use of M, during her natural life, and after her death for the use of her children (the heirs of B) as tenants in common. The complainant alleged in her present bill, that she was not aware of the purpose designed to be effected by the former decree—that she intended simply to get authority for a sale of a part of the property, and

that the residue should be held subject to her sole use absolutely—that she did not discover the effect of the decree of 1815, until the latter end of the year 1816, when the time limited for reviewing decrees upon appeal had expired; that then she applied to the Legislature for relief, who thereupon passed an act (1816 ch. 157,) declaring that the said deeds and decree were null and void, so far as the same extended to vest the property of M in trust, and that all the estate which had *not* been sold, and then vested in trust, be vested in the said M, in the same manner and under the same conditions, and none other, that married women can, and do hold property in this State, of the same description, with a saving of the rights of other persons.    The bill also alleged, that the rights of a *feme covert*, could only be concluded by a privy examination.    The heirs of B consented to a decree, but those of I, claimed the property as a security for their father's debt.    The administrator of I was then made a party, by supplemental bill averring satisfaction of this debt.    He denied such payment.    Before a final hearing in Chancery, the heirs of I filed exceptions to the allegations of the bill; to the sufficiency of the evidence; and also to the admissibility of evidence to prove that I's claim was not due at the date of the decree, or that it had been since satisfied. *Held upon appeal;*

1st. That if the bill in this cause had been unequivocal in its character, and distinctly disclosed the grounds on which its claim to relief was predicated, then according to the act of 1832, ch. 302, the sufficiency of the averments in the bill would be excluded from the consideration of the appellate court; but as it was peculiar in its structure, and so multifarious in its character, as to be viewed in a great variety of aspects, it was not practicable for the defendants to take more specific exceptions to its averments than they had done, and their sufficiency was still open to consideration.

2d. The act of 1832, ch. 302, does not require any exception to be filed, to the want or insufficiency of evidence in Chancery, but restrains parties in the appellate court from making objection to the competency of witnesses, or the admissibility of evidence, unless the point insisted on, was raised by exception in the court below.

3d. A general exception in Chancery to the competency or admissibility of evidence, will not avail upon appeal. The exceptions should be sufficiently definite to apprize the opposite party of the particular witnesses, or evidence, designed to be excepted to

4th. Where exception to averments in a bill are sufficiently specific, and point out the defect of the bill on a particular subject, the evidence taken in support of that part of the cause, (it being upon a distinct and independent matter) must be treated as evidence of a fact not in issue and rejected.

5th. A *feme covert* may create a lien in Equity upon her sole and separate estate in lands, without a privy examination.

6th. The settlement by decree of a married woman's estate to her separate use for life, with remainder to her children, is a strong circumstance to recommend it to the favour and protection of a court of Equity. It bears intrinsic evidence of its correctness, wisdom, and expediency, and conforms to that mode of settlement always made by the court, where its powers over the

subject are brought into action, by the husband seeking through its aid, the recovery of the wife's property.

7th. The act of 1816, ch. 157, was not intended to authorize M to file a bill of review, for the purpose of reversing the decree referred to in it, nor the adoption of any judicial proceedings to try the validity of the deed and decrees mentioned in it. The Legislature intended to vacate and annul those deeds and decrees, and to re-invest the property, subject to certain exceptions, in the same manner as if they had never existed. And this act therefore, is so direct and obvious a violation of our declaration of rights, as an exercise of judicial authority, and of the 10th section of the Constitution of the *United States,* as impairing the obligation of contracts, that it is null and void.

8th. That if the act of 1816, ch. 157, could be regarded as operating only upon M's rights, so far as to give her a remedy by which the rights of the parties could be adjudicated upon, still her bill must be filed within nine months after the death of her husband, or if preferred by M and B should have been filed within nine months after its passage.

9th. It is the duty of a court of Equity, to see that the rights of infants are not prejudiced or abandoned by the answers of their guardians.

10th. Where a plaintiff shows upon the face of his bill that the court has no jurisdiction, it is immaterial whether the defendant relies upon the want of jurisdiction as a defence or not. It is matter of law which the court must judicially notice. It is not like the ordinary case of limitations, or presumptive bar from lapse of time; the determination of which may depend upon the proofs of the cause.

APPEAL from CHANCERY.

The appellant on the 28th of November 1832, filed a bill in the court of Chancery, against the appellee *Oliver,* the heirs of *Joseph S. Berrett,* and the heirs of one *James Inloes,* praying that certain deeds, and a decree of the court of Chancery, might be vacated and annulled.

It charged, that the complainant before her intermarriage with *Joseph S. Berrett,* (now deceased) was seized and possessed in her own right, of a valuable real and personal estate, under the will of her father. That being so entitled, she on the 9th of March 1809, before her marriage, and in contemplation thereof, together with her intended husband, conveyed her aforesaid property to *John Oliver,* in trust for her sole and separate use. That subsequently to the marriage, doubts being entertained as to the validity of this deed, in consequence of the minority at the time of its execution of both

25          v. 7

the grantors; the said *Joseph S. Berrett* on the 28th of March 1811, executed a second deed to *Sarah C. O'Donnell*, the mother of the complainant, settling the property embraced in the first deed, to the same uses, as it was by that deed intended to be conveyed to. That on the 17th of July 1813, the complainant, her husband, and *Sarah C. O'Donnell* united in a deed of the above property to *James Inloes*, in trust to secure to him the sum of $3000, paid by him to the complainant, and after accomplishing that object, to hold the residue of the estate, for her separate use, and subject to her sole, and separate control.

That on the 29th of May, 1815, the present complainant, her husband, and *Inloes*, filed a bill in the court of Chancery, against *Sarah C. O'Donnell* and *John Oliver*, upon which such proceedings were had, that on the same day a decree passed, by which the said deeds were vacated, and the property contained in them was vested in the said *Inloes*, in trust, to sell a portion thereof for certain specified purposes; and to hold the balance for the separate use of the complainant during her natural life, and after her death, for the use of her children as tenants in common. That, although the complainant was apprized of the filing of this bill, she was not aware of the purpose designed to be effected by it, or she would not have given it her sanction. That her object was simply to get authority for the sale of a part of the property, and that the residue should be held by the trustee subject to her sole and separate use, absolutely, and for ever; and that it was not until the latter end of the year 1816, when the time limited, for reviewing decrees upon appeal had expired, that she discovered, that her absolute, and fee simple interest had been cut down to a mere estate for life. That immediately upon her ascertaining the effect of this decree, she petitioned the Legislature, who thereupon passed an act for her benefit, relieving her from its operation, so far as it was competent for that body to do so. The bill then asserts, that the decree cannot have the effect imputed to it, of reducing the complainant's interest from a fee simple, to a life estate,

because the estate of a *feme covert*, can only in *Maryland* be affected, by a conveyance, with privy examination, in conformity with our acts of Assembly.

*Prayer*, that the Chancellor will review the decree, vacate that, and the three deeds; and that the property may be vested in the complainant in the same manner as if they had never existed, and for general relief.

After the defendants had answered the heirs of *Berrett* consenting to a decree, and the heirs of *Inloes* by their answers had affirmed, that the property was held by their father, subject to his claim upon it for $3000, and that it is now liable for that claim; the complainant filed a supplemental bill, making the administrator of *Inloes* a party, and averring that the aforesaid debt, either never had existed, or had been paid and satisfied.

The administrator answered this bill, insisting that the property stood charged with the debt, and that the same is still due and unpaid.

Proof was taken on both sides, in reference to this debt, but it is omitted, as having no bearing upon the legal propositions decided by this court.

Before the cause was brought before his Honor the Chancellor, the defendants the heirs and administrator of *Inloes*, filed the following exception to the allegations in the bill, and the sufficiency, and admissibility of the plaintiff's evidence.

1. The allegations in the said bill, if they were proved, are not sufficient to entitle the complainant to a review and reversal, and modification of the decree, in the said bill complained of.

2. The testimony in the cause is not sufficient to prove the allegations in the bill, to entitle the complainant to a review and reversal of said decree.

3. Upon the allegations in the bill, whether the decree is altered or not, the complainant is not to be relieved against these defendants, except upon the terms of paying the claim of said *Inloes*, as stated in the proceedings.

4. The allegations in the bill are not sufficient to show that said claim was not justly due and owing; nor is the evidence sufficient to show, that it is not still justly due and owing.

5. Assuming that said claim was at any time justly due, and was secured by the aforesaid decree, the allegations in said bill, are not sufficient (even if proved) to show, that said claim has been satisfied.

6. That upon the allegations in the bill, it is not competent for the complainant to offer any evidence to prove that said claim was not justly due at the date of said decree, or that said claim has been since satisfied.

7. That the evidence offered is not sufficient to prove, that said claim was not justly due, or that it has been satisfied.

8. That these defendants are entitled to retain their rights in the lands in the proceedings mentioned, until the claim of the said *James Inloes* deceased, as stated in the proceedings, is fully satisfied.

Upon these proceedings, the cause was argued before *Bland*, Chancellor, at December term 1833, who by his decree of that term dismissed the bill with costs, being of opinion, that there was no proof, that the decree of the 29th of May 1815, was obtained by mistake or fraud.

From this decree, the complainant appealed to the Court of Appeals.

The cause came on to be argued before BUCHANAN, Ch. J., and STEPHEN, DORSEY, and SPENCE, Judges.

TANEY, and G. H. STEWART, for the appellant contended.

1. That the decree of the 29th of May 1815, ought to have been set aside, so far as it proposes to restrict the interest of the complainant in the property therein mentioned to a mere life estate, because in that particular it was obtained by surprize upon her. 1 *Chitty Dig.* 461, 683. *Ramsbottom vs. Gosden,* 1 *Ves. and B.* 168. *Bingham vs. Bingham,* 1 *Ves. Sr.* 126. *Kidney vs. Cousmaker,* 12 *Ves.* 136. *Oldham vs*

*Hughes*, 2 *Atk.* 455. 1 *Mad. Ch.* 256. 1 *Roper H. and W.* 584. *Wesley vs. Thomas*, 6 *H. and J.* 24. 2 *Chitty Dig* 956. *Dreury vs. Thacker*, 3 *Swanst.* 534 (*note.*) *Mitf.* 139.

2. That in consequence of the coverture of the complainant at the time of the passage of said decree, the court of Chancery had no jurisdiction to reduce her estate, and for that reason, and to remove the cloud from her title, this court will now interfere. Judicial power, cannot *proprio vigore* take property from one, and give it to another. There must be a contract. *Evans vs. Cogan*, 2 *Pr. Wms.* 451. *Richards vs. Chambers*, 10 *Ves.* 580. 3 *Jac. and Walk.* 665. 2 *Chitty Dig.* 773. *Woollands vs. Crowcher*, 12 *Ves.* 177. 1 *Mad. Ch.* 777. *Sampeyreac and Stewart vs. United States*, 7 *Peters* 238. *Livingston vs. Story*, 9 *Peters* 632.

3. That the act of 1816, ch. 157, has the effect of opening the decree of 1815, and in that respect at least, is the legitimate exercise of constitutional power. *Garrettson vs. Cole*, 1 *Harr. and Johns.* 391. *Gover vs. Hall*, 3 *Harr. and Johns.* 49. *Sampeyreac and Stewart vs. United States*, 7 *Peters* 238. *Lessee of Livingston vs. Moore, et al, Ib.* 546. And upon the proofs taken under the present proceeding, the Chancellor should have annulled the decree complained of.

4. That the heirs and representative of *Inloes* have no interest under that decree, and cannot therefore resist the application of the complainant to have it corrected, or annulled. Their interest, if they have any, is under the deed of 1813, which however gives them no lien; but if it did, the evidence abundantly shows it to have been discharged by payment.

5. It may be argued, that the bill does not seek to avoid the decree upon the ground of mistake, surprize, or fraud. This is not so in point of fact, the allegation being substantially made; but if it were not, the defendants are precluded from urging the objection by the act of 1832, ch. 302, which requires the objection to be pointed out in the court below by exception. *Evans et al, vs. Iglehart et al*, 6 *Gill and Johns.* 171.

It is true exceptions were filed, but they are too vague, and indefinite. They should have designated the particular defect in the frame of the bill intended to be relied upon.

6. The present bill was filed in time. Limitations did not begin to run against the complainant, until after the death of her husband. If, however, that is not the case, and the statute is to be considered as commencing from the date of the decree of 1815, still the objection should have been taken by plea, or relied upon in the answer. *McCormick vs. Gibson,* 3 *G. and J.* 12. *Deloraine vs. Browne,* 3 *Bro. Ch. C.* 639. *Lytton vs. Lytton,* 4 *Ib.* 445.

7. The frame of the bill is such as to entitle the complainant to relief in some form. It may be regarded as an original bill operating on another bill, or a bill of review to correct errors apparent on the face of the decree, which may be filed without leave. *Mitford* 122, 138, 139, *&c.* Or it may be treated as a supplemental, or amended bill, and in either view would accomplish the purpose intended. *Mitf.* 89, 114, 115.

ALEXANDER and JOHNSON for the appellees.

1. Treating the appellant's bill as an original bill, and she can have no relief against the decree of 1815, because she has neither alleged fraud, or any other circumstance in avoidance of it. *Mitf.* 139. *Hollingshead's case,* 1 *Pr. Wms.* 743.

2. Considered as a bill of review, the only matter alleged in impeachment of the decree, is the coverture of the appellant, and that is not sufficient, the court of Chancery having full power to bind the inheritance of a married woman, upon her application. *Brundige et al, vs. Poor, et ux,* 2 *Gill and Johns.* 1. *Willis vs. Beale, Ib.* 458. *Lowry et ux, vs. Tiernan and Williamson,* 2 *H. and G.* 34. Nor in this aspect can it affect the claim of *Inloes,* as that claim was not embraced in the former decree, and upon a bill of review new matter cannot be introduced. Its only office, is to review the former decree, in reference to the subjects referred to in it. *Burch et al, vs. Scott,* 1 *Gill and Johns.* 423. 2 *Ball and B.* 154. *Mellish*

*vs. Williams,* 1 *Vernon* 166. *Perry vs. Phelps,* 17 *Ves.* 173. *Ib.* 178. And the error must be apparent in the body of the decree itself. *Beames Orders* 1.

Regarding the deeds of trust as void, then the decree of 1815, rather impaired the rights of the husband, than of the wife. But if those deeds are good, then the wife in reference to the property contained in them, is to be considered as a *feme sole,* and her acts as obligatory upon her, as if she were single. *Pybus vs. Smith,* 3 *Bro. Ch. R.* 340. *Allen vs. Papworth,* 1 *Ves. Sr.* 163. *Grigby vs. Cox, Ib.* 517. *Herline vs. Tenant and wife,* 1 *Bro. Ch. C.* 16. *Sturgis vs. Corp,* 13 *Ves.* 190. The husband abandoned his marital rights over his wife's property, in consideration of the provision made by the decree for his children, and therefore to set it aside after his death, would be essentially unjust. A reasonable decree will not be set aside upon a bill of review, though there is error upon its face. *2 Coxe 3. Richmond vs. Tayleur,* 1 *P. Wms.* 734.

3. Viewing the wife, as a *feme sole* in reference to the property in question, as she undoubtedly was, then whatever objections might have originally existed to the decree, the application for its review comes too late. *Lytton vs. Lytton,* 4 *Bro. Ch. R.* 458.

Such an application must be made within the time limited for appeals.

4. The claim of *Inloes* being recognized by the conveyance of July 1813, and neither the claim or conveyance being impeached, the appellant as a condition to being relieved against the decree, will be required to pay the claim. The appellant was unquestionably bound by the deed of 1813, considered as a contract, and affecting her separate estate. *Tiernan vs. Poor and wife,* 1 *G. and J.* 216.

5. *Inloes'* claim cannot be disputed upon the present bill. Its validity is not called in question, but if it was, the proofs, do not sustain the allegation.

6. An appeal however, will not be from a decree dismissing a bill of review. It does not settle the rights of the parties—

that was done by the original decree, from which an appeal should have been prosecuted in time, if its provisions were unsatisfactory. This was not done, and the attempt now is, to induce the chancellor to re-examine his former judgment. It was in passing that former judgment, and not in refusing to revise it, that the appellant has been aggrieved, if she has been aggrieved at all.

DORSEY, Judge, delivered the opinion of the court.

The preliminary question which the appellees have raised, predicated upon the idea, that this is a bill of review, seeking the reversal of the Chancellor's decree, on the ground of error in law patent on the face of the decree, denies to the appellant the privilege of prosecuting this appeal, upon the principle, that this decree of dismissal, whether right or wrong, does not materially prejudice or conclude any of his valuable rights. In that innocent, immaterial light, we cannot regard it, but believing that it does foreclose and settle rights, highly important to the interests of the appellant, we deem it a fit subject for revision, in an appellate tribunal.

Several incidental questions have been discussed, which we will advert to, before we proceed to the examination of the main points in the cause. It has been urged by the appellees, that the appellant cannot obtain the relief she has asked for, because of the insufficiency of the averments in her bill. That if she seeks to vacate the decree of 1815 on the ground of fraud, mistake, or surprise, such fact must distinctly appear in the statements of the bill. To this it has been replied, that by the act of 1832, ch. 302, sec. 5, all objection to the sufficiency of averments of the bill, shall be made by exceptions filed in the cause, and no point shall be raised, noticed, determined or acted upon in the court of Appeals, unless it shall plainly appear in the record, that such point had been raised by exceptions, in the court of Chancery, and that the exceptions in this respect filed by the appellees, were so general and indefinite, that they should be wholly rejected, as in no wise complying with that particularity and

certainty, which it was the design of the Legislature, that such exceptions should assume. We should feel no hesitation in so regarding these exceptions, if taken to a bill in Chancery in the ordinary form. But to the present bill, which its advocate has refused to class under any definite head of bills in Equity; but has assigned to it, as many characters as the chameleon assumes colors, it would be unreasonable to require exceptions more discriminating and specific, than those used on the part of the appellees.

In support of this bill it has been insisted, that it may be regarded as an original bill, seeking to remove a void or voidable incumbrance or conveyance, hanging as a cloud over the title of the appellant; or as an amended bill, or as a supplemental bill; or as a bill of review without leave, or as an original bill seeking to avoid certain deeds of conveyance, and a decree of the court of Chancery, as being obtained by fraud, or by mistake, or by surprise. If this bill be so peculiar in its structure, so multifarious in its character, as that it may be viewed in all the various aspects which have been ascribed to it; more specific exceptions, to the insufficiency of its averments, than those which have been taken, could not in reason be demanded of the appellees. Had the bill been unequivocal in its character, and distinctly disclosed the grounds on which its claim to relief was predicated, then according to the spirit and true intent, of the act of 1832, would the question of the sufficiency of the averments in the bill be excluded from our consideration, and the appellees would have lost the benefits contemplated by their exceptions, except those which relate to the mortgage debt claimed by *Inloes'* representatives. In relation thereto, the exceptions to the averments in the bill are sufficiently pointed.

A similar objection has been taken to the appellees exceptions to the sufficiency of the evidence adduced in support of the allegations in the bill. But on this score, the appellant has no reason to be dissatisfied; nor have the appellees los† any thing from the want of greater particularity. The act of Assembly makes it neither the interest nor the duty of the

appellees, to raise exceptions to the sufficiency of the evidence on the part of the appellant. Instead then, of regarding the exceptions in this case as uncandid, and evasive, they ought rather to be viewed as the gratuitous and friendly suggestions, of a frank and liberal adversary, pointing out to his enemy the assailable point of his position, that before the battle commenced, he might take measures to fortify and strengthen it. The act of 1832, ch. 302, although it does not require any exception to the want or insufficiency of evidence, does restrain parties in this court, from making any objection to the competency of witnesses, or the admissibility of evidence, unless the point were raised by exception in the court below. No exception was, in this cause, taken to such competency or admissibility, and consequently the objection here taken, to the admissibility in evidence, of the schedule of property, and list of debts due to *James Inloes*, the insolvent petitioner, cannot avail the appellees. Nor would a general exception in the court below to the competency of the appellant's witnesses, and the admissibility of his evidence, better their condition. To render such exception available, it must be sufficiently definite to apprize the opposite party of the particular witnesses, or evidence designed to be excepted to.

An attempt has been made to shut out the proof and defence opposed by the appellant, to the mortgage debt of *James Inloes* (the payment whereof is insisted on by his heirs, trustee, and administrator) on the ground, of a want of averment in the bill, that the debt has been satisfied or paid, or is not still due and owing. And this objection we think well founded, as far as concerns the heirs of *James Inloes*. A part of the relief prayed for is, that the deed of 1813, from *Berret* and wife, and *Sarah Chew O'Donnell* to *James Inloes*, be cancelled. To obtain it, some allegation of its payment or discharge, is indispensable. The exceptions to the averments in the bill, pointed with sufficient certainty to this defect, and therefore, all the proof taken and relied on by the appellant as a bar to that claim, must be considered as out of this case; being evidence of a fact not in issue in the cause. As curing

.this obvious imperfection in the bill, in respect to all the appellees, it is stated that the amended bill contains this necessary allegation. But that amended bill, it must be remembered, has never been answered by *Inloes'* heirs, and consequently as to them, can produce no such effect as has been imputed to it. The attempt, however, of the heirs of *Inloes*, to exclude from the court the investigation of the merits of this claim, can avail them nothing. In the eyes of a court of Equity, they are mere nominal parties, having no beneficial interest in the subject. Against the trustee and administrator of *James Inloes*, the only party substantially interested in contesting this matter, the requisite allegation has been made in the amended bill, and the equity and validity of this claim is now fairly submitted for determination to this court.

Is this alleged mortgage debt, if unpaid, a subsisting lien on *Mr. Berrett's* real estate ? is the next question to be examined. It originated under the deed of 1813 from *Berrett* and wife, and *Sarah Chew O'Donnell*, to *James Inloes.* What estate in the realty of *Mrs. Berrett* passed by that deed, is first to be ascertained. If it be true, as stated in the bill, that *Berret*, and *Mary E. O'Donnell* were, at the time of the execution of the deed to *John Oliver* in 1809, under the age of twenty-one years, and the deed of marriage settlement on that account *voidable*, (of the correctness of which conclusion however, we mean to express no opinion) then the deed of 1813, transferred to *Inloes* during the life of *Berret*, the legal title to the real estate conveyed to *John Oliver ;* but by reason of the defect as to privy examination in the acknowledgment of that deed, which prevented its operation at law as a legal conveyance, and thereby avoiding in *toto* the deed to *John Oliver*, it passed no legal estate in the reversion to *Inloes*, and left the same in *John Oliver*, subject to the trusts specified in the marriage settlement. According to those trusts, *Mrs. Berrett* was entitled to the property as her separate estate ; on which as such, to the extent of her beneficial interest therein, *James Inloes* had in equity, a specific lien for the debt, intended

to be secured by the deed of 1813. See *Brundige and al, vs. Poor and wife.* 2 *G. and J.* 1.

Has this lien been paid since or discharged, is the next enquiry? Upon this subject we entertain no doubt. We think that abundant evidence, that this claim has been satisfied, is to be found in the proofs, and circumstances of this case; and particularly in the testimony given by *Ephraim Smith, Robert R. Richardson, John Elder,* and *Catharine McDowell;* in the great length of time this claim has been permitted to sleep, the large amount of money subsequently received by *James Inloes* for *Mrs. Berrett;* and in the intrinsic evidence furnished by his list of debts, filed with his petition in 1818, when he applied to *Baltimore* County court, for the benefit of the insolvent laws of *Maryland.* This pretended mortgage debt of *Inloes,* therefore, furnishes no obstacle to the relief sought by the appellant.

Looking to the appellant's bill as seeking relief against the decree of the Chancery court of 1815, on the ground of fraud, it cannot for a moment be sustained. It is utterly destitute of the most essential ingredients of such a bill; it neither charges fraud, nor states facts from which an imputation of fraud could possibly arise; and if it did, there is not a shadow of proof to sustain it. There is also a total absence of all proof, that this decree was procured by either mistake or surprise. So far from these grounds of impeaching the decree being inferrible (as has been contended) from the fact of the property's being settled on *Mrs. Berrett* for life only, and on her children after her death; it is one of the strongest circumstances that could be adduced, to recommend it to the favour and protection of this court. It is a settlement in this respect, bearing on its face intrinsic evidence of its correctness, wisdom, and expediency, and conforms to the letter, to that settlement of the property of a *feme covert,* which a court of Equity always makes, where its powers over the subject are brought into action, by the husband's seeking through its aid, the recovery of the wife's property. Nay, so strict is the chancery rule in *England,* on such an occasion,

that the court will not lend its assistance in securing and settling the wife's property on herself, unless she consent that it be secured to her children after her death. *Johnson vs. Johnson*, 1 *Jacob and Walker* 455.

Has the appellant a right to the relief she seeks, viewing her bill, as a bill of review without leave, asking for the reversal of the chancellor's decree for error of law appearing on the decree itself? is the next question we propose to examine. The act of 1816 ch. 157, entitled, "an act for the relief of *Mary E. Berrett* of *Baltimore* county," it is insisted by the appellant's solicitors, has opened the door for such a bill of review, and rendered it the appropriate mode of seeking the relief they desire. Is such the effect of this act of Assembly? Was it so designed by its framers? It contains but a single section, and is in these words: "Be it enacted by the *General Assembly of Maryland*, that the deeds which were executed by *Mary E. Berrett* and *Joseph S. Berrett* her husband (upon their marriage) to *John Oliver*, of the city of *Baltimore*, and after their marriage to the said *John Oliver* and *Sarah Chew O'Donnell*, and also to *James Inloes*; making a settlement of the estate real and personal of the said *Mary E. Berrett* in trust, for the uses and purposes therein mentioned; and also the several decrees of the chancellor of *Maryland*, and the County court of *Baltimore* county, in and upon the premises, and appointing successively *James Inloes*, and finally *Gabriel Paul*, trustees in the premises, in the place of the said *John Oliver*, and *Sarah Chew O'Donnell*, be and the same are hereby declared to be null and void; so far as the same extend to vest the property of the said *Mary E. Berrett* in trust, and that all the estate of the said *Mary E. Berrett*, which has not been sold and disposed of by virtue of, and under the authority of the decree aforesaid, and which is now vested in said *Gabriel Paul* in trust, be, and the same is hereby vested in the said *Mary E. Berrett* in the same manner, and under the same conditions, and none other, as married women can and do, by the laws of this *State*, hold and enjoy property of the same

description, Provided, and it is hereby expressly declared, that nothing in this act, shall in any way or manner, affect the right of any other person in and to any part of the said property, and that this act be construed only to render void and annul the trust now existing as aforesaid, and to leave the said *Mary E. Berrett,* with respect to that part of her property now held in trust, in the same manner as if no such trust had ever existed." Construing this act of Assembly as all other Legislative enactments must be construed; according to the declared will and obvious design of the Legislature; can the human mind be brought to the conclusion, that the intention of the *General Assembly* in passing that law, was to authorize the filing of a bill of review, for the purpose of reversing the decree referred to? Is there a sentence or word in the law, which could suggest the idea; that in passing it, the Legislature intended, or contemplated, any subsequent judicial proceedings, to try the validity of the decrees and deeds which it mentions? If there be, it requires keener optics than we possess, to discern it. To us their design is too manifest to admit of a momentary doubt. They intended to do what their language unequivocally imports; by legislative enactment, to vacate and annul the deeds and decrees on which they were acting; and to divest the rights and title, of the other persons by them named in the real and personal estate held by *Mary E. Berrett* before the date of said deeds and decrees, and to reinvest the same in her in the same manner, as if those deeds and decrees had never existed; subject to the proviso, contained in the act of Assembly. Can the Legislature exercise such a power? Unquestionably not. This act of Assembly, is so direct and obvious a violation of our declaration of rights (a part of the constitutional code of Maryland) which declares, " that the legislative, executive, and judicial powers of government ought to be forever, distinct from each other," and of the 10th section of the constitution of the *United States,* which provides, that no *State* shall pass any law impairing the obligation of contracts, that to prove its unconstitutionality needs neither argument, illustra-

tion, or authority. We regard, therefore, this act of Assembly as utterly null and void; and wholly inoperative, upon the deeds, decrees, and rights of the persons mentioned therein.

But suppose there could be ascribed to it, that qualified effect, which has been imputed to it, by the appellant, viz: that it only operated upon the remedy, by which the rights of the parties were to be adjudicated; and so far removed from *Mrs. Berrett* and her husband, the conclusiveness of the decree of 1815, as to authorize its reversion, by such a bill of review as that now under consideration. Within what time must that bill have been filed? In nine months after the passage of the act of Assembly, if preferred by *Berrett* and and wife; and within nine months after the death of *Berrett*, or the knowledge of that event had reached her, if filed by *Mrs. Berrett* after discoverture; that being the time fixed by the act of Assembly, limiting appeals from decrees and orders of the court of Chancery. The present bill was filed more than two years after information of *Berrett's* death was communicated to the appellant.

It is alleged, that this objection does not arise in this case; the appellees not having relied on it in their answer. This suggestion, if entitled to any weight, is answered by the fact; that this proceeding is in part against infants, and it is the duty of a court of Equity, to see that their rights are not prejudiced or abandoned, by the answers of their guardians. But there is nothing in this objection. It is not the ordinary case of limitations or presumptive bar from lapse of time; the determination of which may depend upon the proofs in the cause. But is a case, where a plaintiff comes before you, asking for relief, and shews upon the face of his bill, that you have no jurisdiction over the subject. Against the influence of such a defect, you cannot shut your eyes, whether the defendant rely on it as a defence, in his answer, by plea, or on demurrer, or not. It is a matter of law, of which the court must judicially take notice. It admonishes them not to proceed in the trial; that they have no jurisdiction over the subject matter thus illegally attempted to be brought before

them.  And they dispose of the question in precisely the same manner, that an appellate court would do, if a case were brought before them, in which the appeal had been taken, long after the time limited by law for the granting of such appeals.  In a proceeding like the present, the Chancery court is in fact an appellate tribunal, called on to review its own decree, in a case where the application for its aid, shews the absence of all appellate power in the court.  *Edwards vs. Carroll*, 5 *Bro. P. C.* 466 ; *Foster vs. Hodgson*, 19 *Ves.* 180 ; *and Mitf. P. C. note (e)* 212.

The views we have taken of this case, render it unnecessary for us to examine the several grounds urged in the argument, for the reversal of the decree of 1815.

Looking to the appellant's proceeding, as a bill of review without leave (and in no other character, more favourable to her can it be regarded) we cannot do otherwise than affirm the Chancellor's decree, dismissing the bill, with costs in both courts.

DECREE AFFIRMED WITH COSTS IN BOTH COURTS.