BEARD, (McCOMB v.)　See Case No. 8,706.

## Case No. 1,181.

### BEARD et al. v. ROWAN.

[1 McLean, 135.] [1]

Circuit Court, D. Kentucky. Nov. Term, 1831. [2]

ALIENS—CAPACITY TO HOLD AND TRANSMIT LAND
—RETROSPECTIVE LEGISLATION—POWER OF STATE
—EXECUTORY DEVISE — POWER OF EXECUTOR—
LAND HELD IN TRUST.

1. An executor in a will has no power to convey lands. The lands had been devised to executors in trust.

2. An executory devise good, and takes effect on the happening of the contingency.

3. A state has power to give a capacity to aliens to hold lands within it.

4. An act which declares an alien, "which shall have resided in the state two years," shall be capable of holding and transmitting lands, the same as a citizen, applies as well to future as to past residence.

[See note at end of case.]

[At law. Writ of right by Henry Beard, William A. Beard, Lewis Hawkins, and Mary, his wife, demandants, against John Rowan, tenant, for 100 acres of land. Tried by jury. Verdict for the tenant.

[The case was afterwards taken to the supreme court, on writ of error, by the demandants, and the judgment of this court was affirmed. Beard v. Rowan, 9 Pet. (34 U. S.) 301.]

Mr. Pirtle, for plaintiffs.
Mr. Harden, for defendant.

OPINION OF THE COURT. The plaintiffs have brought a writ of right for one hundred acres of land, near to or adjoining the city of Louisville. The defendant in his plea sets up a claim to ninety-five acres of the premises, and disclaims as to the residue. And he puts himself on the assize and prays recognition to be made as to the better right. The parties both claim under the will of John Campbell. The demandants claim under a deed from Taylor, the surviving executor of John · Campbell, dated the 21st of April, 1826. The tenant claims under a devise in the will of John Campbell.

The following facts are agreed to by the parties. 1. That John Campbell was born in the kingdom of Ireland; that he came to the United States of America prior to the Revolutionary War; that he continued to reside in the said United States, from the time of his migration thereto, until he departed this life, in October, 1799, in Fayette county, in the state of Kentucky, where he then resided; that the 25th July, 1786, he made and duly published his last will and testament, of that date, with an endorsement thereon, dated the 5th April, 1791; that said will and en-

dorsement were duly proved and recorded the 13th January, 1800, in the county court of Fayette county; and that the said John Campbell was seised in fee simple at the time of his death of the premises in controversy, and that he was never married.

2. That Robert Campbell was born in the kingdom of Ireland; that he migrated to the United States of America before the Revolutionary War; that he continued to reside therein until his death, in August, 1805, near Louisville, Kentucky; that he had resided in Kentucky many years before his death; that he died intestate, was never married, and was a brother of the whole blood of John Campbell.

3. That Allen Campbell was born in the kingdom of Ireland, and was about twenty-five or six years of age when he died; that he migrated to the United States in 1796, and resided in the city of Philadelphia until he came to the state of Kentucky, in December, 1799; that he resided in Kentucky from that time until the 16th September, 1804, when he died, never having been married. He was a half brother on the father's side to John and Robert Campbell and Sarah Beard.

4. That the said Sarah Beard was born in the kingdom of Ireland, and migrated to Kentucky in 1800, where she resided until her decease, in October, 1806; that she was a sister of the whole blood to John and Robert Campbell, and sister of the half blood to Allen Campbell on the side of the father; that she was a widow when she came to Kentucky, and so continued until her death; that at her death she had three surviving children, to wit, William Beard, Joseph Beard, and Elizabeth McGowan, all of whom were born in Ireland; that William Beard came to the United States in 1790, was never naturalized, and died in 1813; that he was married, and had two children, issue of said marriage, at the death of the said John Campbell, to wit, Nancy C. Beard and Sarah Beard, who were his only children at that time; that the said Nancy C. Beard intermarried with Robert Byewaters, and is still living; and Sarah Beard intermarried with Hankerson Byewaters, and is still living; that the mother of the said Nancy and Sarah departed this life, and the said William Beard married a second time, and had the following issue of said marriage, William A. Beard, Catherine Beard, Mary Beard, John Beard, Charles Beard, and Joseph Beard, all of whom were born since the death of the said John Campbell; that the said Catherine Beard has intermarried with, and is now the wife of Henry H. Shepard; that the said Mary Beard has intermarried with, and is now the wife of Lewis Hawkins; that the said Charles Beard died in March, 1831, an infant, and without a child; that the said John, Charles, and Joseph Beard were born since the death of the said Sarah Beard; that the said Joseph Beard and Elizabeth McGowan,

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 9 Pet. (34 U. S.) 301.]

children of the said Sarah Beard, came with her to Kentucky, and are still living; that the following are the children of the said last named Joseph Beard, to wit, Henry Beard, Ann Daley, wife of Lawrence Daley, Isabella McLear, wife of Charles McLear, Sarah McLear, wife of Francis McLear, and Joseph Beard, Jun.

5. That the said Campbell, Robert Campbell, Allen Campbell, and Sarah Beard, were the only surviving children of Allen Campbell the elder, who departed this life in Ireland, before the said John Campbell.

6. That Charles Simms and Richard Taylor survived the other trustees and executors of John Campbell; that said Simms departed this life in the District of Columbia about the year 1825 or 6, never having been in the state of Kentucky; that neither of the other trustees, except Taylor and Sullivan, were ever in the state of Kentucky after the decease of the said John Campbell; that said Taylor resided therein at the death of John Campbell, and so continued until his death in 1828; and that said Taylor alone qualified as executor of the said John Campbell in Kentucky.

7. That the said defendants were possessed of the premises in contest in this action at the time of the service of the process, and were in possession in April, 1826, and prior to that time.

The will of John Campbell contains the following devise—

"I do further direct that after the decease of my said father, all the profits of my lands within five miles of the mouth of Bear Grass, shall be annually paid to the guardian of my said half brother, Allen Campbell, during his minority, to be applied to his education and maintenance, if so much be required therefor; if not, then the surplus to be laid out on interest by my said trustees, till my said half brother shall arrive at the age of twenty-one years or marry; but upon either of the said contingencies happening, the aforesaid profits shall then and thenceforth be paid to my said half brother for and during the term of ———; and if within that time my said half brother shall become a citizen of the United States, or be otherwise qualified by law to take and hold real estate within the same, I then direct that my said trustees, or the survivors or survivor of them, shall convey to him, my said half brother Allen Campbell. his heirs or assigns, in fee simple, all the lands herein before described in this devise; but if my said half brother shall not within the time aforesaid become a citizen as aforesaid, I then direct that my said trustees or the survivors or survivor of them shall sell and dispose of the aforesaid lands hereby directed to be conveyed to him on two years' credit, with interest from the date, to be paid annually, and the money and interest arising from such sale to be transmitted to my said half brother, to whom I give and bequeath the same."

"It is my further will and devise that, in case my said half brother shall die before the expiration of the aforesaid term of five years, after his arrival at the age of twenty-one years, the land intended by the next preceding clause to be devised to him, shall be sold by said trustees on two years' credit, and the money arising from such sale, when received, shall be transmitted to the guardians of the children which my said half brother may leave, to be by the said guardians lent out on interest, and equal division shall be made thereof amongst them; but should my said half brother become a citizen of the United States of America, or be otherwise qualified to hold real estate within the same before his death, it is then my will and devise that he shall have the sole and absolute disposal of all the estate hereinbefore devised and bequeathed to him notwithstanding he may not have obtained deeds therefor, from my said trustees."

"It is my further will and devise that in case my said half brother shall die before he shall become qualified to hold real estate as aforesaid, and without child or children, my said trustees shall make sale of the lands hereby directed to be conveyed to him, as is before directed, on two years' credit, and that the money arising by sale be appropriated to the use of my said sister, Sarah Beard, and all the children which she hath," &c.

The demandants to sustain their right exhibited in evidence a deed executed the 21st April, 1826, by Richard Taylor, as executor of John Campbell, to Joseph Beard, Elizabeth McGowan, and the heirs of William Beard. This deed after reciting the devise to Allen Campbell with the conditions as above stated, declares, that "whereas the said Allen Campbell died in 1804 without having disposed of certain parts of said real estate, by which it again reverted to the estate of said Campbell, and became subject to the devises in his will, or so much thereof as was undisposed of by said Campbell during his life time." A deed was also given in evidence by the demandants from Joseph Beard to Henry Beard, Lawrence Daley and others, conveying all his interest in the estate of John Campbell, deceased.

On the part of the tenant a deed was given in evidence from Sarah Beard, sister of John Campbell the testator, to Fortunatus Cosby, dated 7th July, 1806, and other mesne conveyances, the last of which was from William Lytle to the tenant, dated the 17th February, 1822. In 1800 Allen Campbell was put into possession of the whole landed estate devised to him in the will, by the executor Richard Taylor, as the owner thereof in fee. He occupied the same as his own, selling a part of the land, until his decease. On the death of Allen Campbell the estate undisposed of by him, was claimed by his half brother and sister, Robert Campbell and Sarah Beard, and on the death of Robert Campbell, Sarah Beard claimed as heir to the whole estate. Being thus seised of the estate

she conveyed the land in controversy with other tracts to Cosby in 1806, as above stated.

The counsel for the demandants contends that under the will the fee of the land was vested in Richard Taylor as trustee, and continued so vested until the conveyance was made by him to Beard and others, by the deed in evidence. That Allen Campbell could not take the fee in the land except by conveyance from the trustee. In answer to this it may be said, that Richard Taylor though named in the codicil to the will as one of the executors, is no where named as one of the trustees. These are James Milligan, Charles Simms, William Elliot, and Philip Ross, who are also named as executors. Now as an executor, Taylor had no power to convey the estate, as the fee was not vested in him. This defect of power in the executor is fatal to the plaintiffs' right, as their claim is founded on the deed of Taylor. But another view of the case is equally fatal to their right. It is clear from the will that Allen Campbell took the estate in fee simple, if by the laws of the state he was capable of holding real estate. That this was the intention of the testator, is as clearly expressed, as that Allen Campbell was, in any form, his devisee. And the testator used great caution in the will to secure the land devised to Allen Campbell, or its proceeds. And the great question in the case is, and on the decision of which, a very large amount of property in the city of Louisville, or adjoining to it, is understood to depend, whether Allen Campbell could take the land devised by the will, he never having been naturalized. Being an alien, it is not pretended that he was capable of holding and transmitting real estate, in Kentucky, unless he comes within the provisions of the statute of the 18th December, 1800. This statute provides, that "whereas, by the laws now in force in this commonwealth, aliens cannot hold lands therein; and whereas, it is considered the true interest of this state, that such prohibition be done away. Be it therefore enacted, &c. that any alien, other than alien enemies, who shall have actually resided within this commonwealth two years, shall, during the continuance of his residence herein, after the said period, be enabled to hold, receive, and pass any right, title, or interest, to any lands or other estate known within the commonwealth, in the same manner, and under the same regulations, as the citizens of this state may lawfully do."

Allen Campbell came to Kentucky in December, 1799, and continued to reside in the state, until his decease in September, 1804. Does this residence bring him within the provisions of the act? It is contended that it does not, as by the act a residence of two years, prior to its passage, is indispensable to claim a right under it; and the residence of Campbell did not exceed a year. The words of the act are "Be it enacted, &c. that any alien, &c. who shall

have actually resided within this commonwealth two years," &c. Now, do these words refer as well to the future, as the past? We think they do. The act was designed to remove the prohibition from aliens, so as to enable them to hold and transmit lands within the state, while residing therein, the same as citizens. This being the policy of the state, as declared in the preamble, no reason is perceived why it should not operate in time to come, as well as in past time. Indeed, such is the inference to be drawn from the policy of the law, and a fair construction of its language will give this effect to it. "Shall have resided," embraces the future, unless there are words connected with these which show a different application of them was designed. We are clearly of opinion that the law gives the right to aliens, on two years' residence subsequent to the law, as well as prior to it, and that Allen Campbell under this law, after two years' residence in Kentucky, had the same capacity, though an alien, to receive and transmit the land devised to him, as a citizen.

An executory devise is good, to take effect in future, without any particular estate to support it. This was good, therefore, as an executory devise, and the title vested under the will so soon as the devisee, by the statute became capable of taking the estate. Or if the title vested in the trustees named in the will, it is equally clear, that it became divested on the happening of the above contingency. Allen Campbell, before his decease, became vested with the land in dispute, in fee simple, and on his decease, it descended to his heirs at law. The right, then, of the demandants fails on both grounds, First, the deed of the executor is inoperative and void; he not having authority to make it. And secondly, Allen Campbell took the land as devisee in the will, and on his decease it descended to his heirs at law. And the court so instructed the jury, the facts being admitted on the record. The jury on this instruction found "that the tenant has more right to hold the tenement as he now holds it, in the written count mentioned, than the demandants to have it as they now demand it."

Exceptions were taken to the charge of the court, and the cause was removed to the supreme court, by writ of error, where the judgment of the circuit court was affirmed. [Beard v. Rowan,] 9 Pet. [34 U. S.] 301.

[NOTE. In delivering the opinion of the supreme court, Mr. Justice Thompson said: "The preamble in the act may be resorted to, to aid in the construction of the enacting clause, when any ambiguity exists. That preamble evidently shows that the intention of the legislature was to make a general provision for removing the disability of aliens to hold real estate, and this, founded upon state policy, is doubtless for the purpose of encouraging the settlement of the country; and this object would be in a great measure defeated by restricting the act to aliens who shall have resided two years in the state before the passing of the act. The

condition upon which aliens are placed on the same footing with citizens with respect to the right of holding and disposing of land is a two years' residence within the state; and the full effect and benefit of the act, and the clear intention of the legislature, require a construction which gives to it a prospective, as well as retrospective, application: and, under this construction, Allen Campbell became qualified to take and hold the title to the land in question, and pass the same, in the same manner as if he had been a citizen of the state. No constitutional objection can be made to this act. It does not profess to naturalize aliens. It is not necessary that they should be made citizens in order to hold and pass real estate, and the condition upon which this may be done is a matter resting entirely with the state legislature. We are, accordingly, unanimously of opinion that the judgment of the circuit court is correct, and it is accordingly affirmed." Beard v. Rowan, 9 Pet. (34 U. S.) 301.]