## FITZPATRICK, Ex'r, vs. HEARNE.

[ACTION ON PROMISSORY NOTE GIVEN FOR PURCHASE-MONEY OF SLAVES.]

1. *Warranty of title to slave; what does not protect vendee against.*—Neither a warranty of title, nor a warranty that slaves sold are slaves for life, protects the vendee from the consequences of revolution, or against the abolition of slavery and the emancipation of the slaves by the government, and the loss of the slaves by either event, is no legal breach of such warranties.

2. *Ordinance No. 38 of the convention of 1867, and ordinance No. 39, last part of paragraph 3; unconstitutionality of.*—Not only the 3d section of ordinance 38 of the convention of 1867, concerning the value of contracts, and for the purchase-money of slaves, is unconstitutional and void, but also the last paragraph of section three of ordinance No. 39 of said convention, that declares "that all judments rendered in the courts of this State, against defendants, where the consideration was the purchase-money or hire of a slave or slaves, are hereby declared to be null

and void," is unconstitutional and void; they both impair the obligation of contracts.

3. *Failure of consideration; what error to charge as.*—A charge to the jury, in an action on a note given on the sale of slaves, that if the consideration of the note was the price of slaves sold, then there was a failure of consideration, and they must find for the defendant, is erroneous.

4. *Ordinances Nos. 38 and 39 of convention of* 1867; *plea setting up, as defense to action on note given for sale of slaves, bad on demurrer.*—In an action on a note given on the sale of slaves, a plea that sets up the ordinances Nos. 38 and 39 of 1867, is bad on demurrer, because the parts of said ordinances referring to notes given, and judgments rendered on such notes, are unconstitutional and void.

5. *Warranty of title, plea that sets up; what is good plea.*—A plea that sets up a warranty of title, and that the slaves sold were slaves for life, to an action on a note given for the price of said slaves, and states that the title failed without the fault of defendant, although inartificial, yet in substance is a good plea, and a demurrer to it should be overruled.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. JAMES Q. SMITH.

The appellant, as plaintiff, and executor of Mrs. Ann Elmore, deceased, brought suit in the circuit court of Lowndes county, to the fall term thereof, in the year 1867, against the appellee, as defendant, on a promissory note for two thousand two hundred and twenty-five dollars, made by the defendant on the 29th day of April, in the year 1856, and payable to the plaintiff, as executor, &c., as aforesaid, and due twenty-four months after the date thereof.

The defendant filed three pleas to the complaint—1st, non-assumpsit within six years; 2d, that the said note was made for the purchase-money of negro slaves, sold by the plaintiff to defendant, and that the title of said slaves was warranted by plaintiff to defendant, for the life of said slaves, and that the title failed without fault on his part; that said note was given for the purchase-money of eight negro slaves, sold by plaintiff, as executor, &c., to defendant; that there was a failure of consideration, in this, to-wit, that said note and consideration was against ordinances Nos. 38 and 39 of the constitutional convention of Alabama, passed December 6th, 1867.

To the second and third pleas the plaintiff demurred.

To the first plea, he assigned several causes of demurrer, to-wit: 1st, that said plea set up no fact that was a defense to the said action; 2d, that said plea did not show how the title to said slaves failed; 3d, that the fact that the slaves, forming the consideration of the note sued on, were emancipated from slavery, by the government of the United States, and the government of the State of Alabama, constituted no defense to the action, because, the said ordinances were unconstitutional and void; and, 4th, that the fact that the consideration of the note was the sale of slaves, by plaintiff to defendant, was no defense to the suit.

To the third plea, the plaintiff assigned the causes following, to-wit: 1st, that the facts stated in said plea did not constitute a defense to the suit; 2d, that the said ordinances were in violation of the constitution of the United States, prohibiting any State from passing any law impairing the obligation of contracts.

The demurrer to these pleas was overruled; and, thereupon, the plaintiff took issue on said pleas.

On the trial, the court gave three charges to the jury, which were excepted to by the plaintiff, and a bill of exceptions was taken, which sets out all of the evidence on both sides. The first charge was, that if "the jury believed the note was given by defendant to plaintiff in consideration of slaves sold by plaintiff to defendant, then there is a failure of consideration, and no action can be maintained thereon, and you must find for the defendant."

It is unnecssary to set out the second and third charges, as they are not considered in the opinion.

Overruling the said demurrer, and the charges of the court to the jury, are assigned for errors.

FITZPATRICK & WILLIAMSON, for appellant.
COX, WITCHER & RUGELEY, *contra.*

PECK, C. J.—The demurrer to the third plea should have been sustained; the matters stated in it constitute no defense to the action. The third section of the said ordinance No. 38, which refers to notes, &c., given for and in

consideration of slaves, has been decided ·at this term, in the case of *McElvain et al. v. Mudd, Adm'r, &c.*, to be unconstitutional and void. Ordinance No. 39, referred to, does not apply to such a case as this. Its objects and purpose are, to declare judgments on certain penal statutes void and inoperative, and that new trials should be granted on certain judgments, where meritorious defenses existed, except the latter part of the third and last section, which " declares that all judgments rendered in any of the courts of this State, against defendants, where the consideration was for the purchase-money or hire of a slave or slaves, are hereby declared to be null and void."

The case of *McElvain et al. v. Mudd, Adm'r, supra*, settles the question as to the validity of this part of said section. It is in violation of the constitution of the United States, and, therefore, null and void.—See article I, § 10, part 1, of that instrument. This disposes of the third plea, and shows that the demurrer to it should have been sustained.

2. The second plea raises the question, as to the lega construction and effect of the warranty set out in said plea, and whether it can operate to defeat the recovery of the plaintiff, either in whole or in part. The language of the warranty, as stated in the plea, is, " that the title of said slaves was warranted by plaintiff to defendant for the life of said negro slaves, and that said title failed, without fault on the part of said defendant." This warranty may be said to combine and contain two warranties—1st, that it is a warranty of title; and 2d, a warranty that the said negroes were slaves for life. This plea, although very inartificially drawn, I am inclined to consider a good plea, in substance, and that the demurrer to it was properly overruled. A demurrer was not the proper way to present the question, that the plaintiff intended and desired to have settled. But as the question, if not disposed of now, will, no doubt, be made in the right way on another trial, and as it is a question greatly perplexing the people, I propose to go on and dispose of it at this time.

. We know in what the breach of these warranties is supposed to consist, to-wit : that the institution of slavery has

been abolished, and the slaves themselves emancipated by the government of the State, and of the United States. The question, therefore, arises, do these warranties protect the vendee, on the sale and purchase of slaves, from the consequences of revolution, or the abolition of slavery by the government of the United States, or of the State, or both? We are prepared to hold, they do not; that neither of these warranties were, in legal contemplation, broken by the abolition of the institution of slavery and the emancipation of the slaves. If slavery for life ever existed in this country, which I can hardly believe any one is so bold as to seriously deny, then the vendor in this case, at the time of this sale, had an estate in fee in the slave sold. If he had not, what estate, then, did he have? Was it an estate for years, or for life? Such estates presupposes the fee to be in some other person. I use the word fee, as the best word to express my meaning, as, accurately speaking, there is no such thing as an estate in fee in things personal; that estate grew up out of the feudal system, and had relation to things real only; and in the quaint doggerel of olden time, an estate, or tenant in fee, was defined as follows:

> " A tenant in fee is he who,
> Without fear or griever,
> Hath lands and hereditaments,
> To himself and heirs forever."

These slaves, at the date of the sale, were as really slaves for life, as they were twenty or fifty years before, if they were so old; and if any one in this country ever owned slaves for life, such was the character of the vendor's title to those slaves at the date of the sale. We are, therefore, without hesitation, prepared to decide, that neither of those warranties, nor both together, protected the vendee against the abolition of slavery by the government. Such a contingency did not enter into the contemplation of either the vendor or vendee at the time of the sale, nor did it form any element in the contract of warranty.

It is in vain to look for authorities in such cases as this, as there never was, before the occurrence of such an event as the recent emancipation of the slaves in this country.

We must, for this reason, rest our decision upon the nature and common sense of the case. The nearest approach to such an event, is found in the emancipation of the slaves by Great Britain in her West India possessions. In that case, the government gave to the owners a mere pittance for the loss of their slaves, amounting to little, if any more, than half the estimated value of the slaves. If such warranties had been supposed to extend to, and protect purchasers against, the acts of the government, we might expect to find cases where purchasers declined to receive the sum offered by the government, and relied upon their warranties, and endeavored to hold their warrantors liable on the same.

This would, necessarily, have given rise to suits for that purpose, and then the cases would have found a place in the books of reports. But, so far as I know or believe, no such cases are to be found in the books, and this, I think, persuasive, if not conclusive, to show that the English jurists did not believe that such warranties protected purchasers against the acts of the government.

If it be said in answer to this, that the British parliament is omnipotent, I reply, admitting all this, which I by no means admit, certainly the people in this country have all the powers that belong, or ever did belong, to parliament ; and they can legitimately, in their eminent sovereignty, do all that parliament can do.

We have declared in our bill of rights, "that all political power is inherent in the people, and all free governments are founded on their authority and instituted for their benefit." But, to me, it seems little short of blasphemy, to say that any created being is omnipotent. Omnipotence is an attribute of the Almighty only—an attribute of Him who created the heavens and the earth, and all things that therein are, and made man in his own image. Omnipotence, therefore, belongs only to the Creator, and not to the creature. But it has never been seriously doubted that the government, especially of the State, when it existed, possessed the power to abolish the institution of slavery. The power that can create, can, certainly, destroy.

The charge of the court, "that if the note in this case was given in consideration of slaves, then there is a failure of consideration, and no action can be maintained thereon," is erroneous. I do not notice the other two charges, because I do not think plaintiff has any cause to complain of them.

There is no defense in this case under the statute of limitations. We have decided at this term, in the case of *Coleman v. Holmes*, that the statute of limitations was suspended in this State from the 11th day of January, in the year 1861, to the 21st day of September, 1865, that being the period within which no legal civil courts existed, in which the people were compelled to have their cases adjudicated. This period being deducted, six years had not elapsed between the maturity of the note and the commencement of this suit.

For the errors in overruling the demurrer to the third plea, and in giving the first charge to the jury, the judgment below is reversed, and the cause remanded for a new trial, at the costs of the appellee.