MARY V. LAWSON, Executrix v. W. S. JEFFRIES et ux.

1. ORDINANCE OF CONSTITUTIONAL CONVENTION OF 1868, GRANTING NEW TRIALS.—The ordinance of April 29, 1868, by the Mississippi Constitutional Convention of that year, granting new trials upon certain classes of final judgments and decrees referred to, and on certain conditions therein named, was not a legislative but a judicial act, and therefore unauthorized and void.

2. JUDICIAL ACTS BY LEGISLATIVE BODIES.—The decisions are, and have always been, uniform in all the states, that legislative bodies have not authority to perform judicial acts.

3. CO-ORDINATE POWERS OF GOVERNMENT.—The separation of the legislative, judicial and executive powers of government is a fundamental principle of American constitutional jurisprudence, and cannot be violated, even by a constitutional convention.

4. POWER OF CONSTITUTIONAL CONVENTIONS.—Constitutional conventions have no more power, in this respect, than legislatures (9 Yerg. 495), and are limited to preliminary, temporary and provisional legislation.

5. SAME—JUDGMENTS.—Delegates to constitutional conventions represent the sovereignty of the state, and are unrestricted in the propositions they shall submit to the people; but even ratification by the people cannot validate violations of the national constitution and of rights already established by judgments which had become final under pre-existing laws.

ERROR to the chancery court of Madison county. YOUNG, Chancellor.

The facts are stated in the opinion of the court.

The following are the errors assigned:

1. The chancery court erred in overruling the motion for a new trial and in refusing to set aside the order dissolving the injunction and the decree dismissing the bill of complaint.

2. The court erred in admitting evidence for the defendant against the motion of complainant.

*W. P. Harris,* for plaintiff in error.

Judicial proceedings during the rebellion are not to be regarded in the same light as such proceedings under the conditions of regular legitimate government and a state of peace. There is no distinction between the different functions of the insurrectionary government as respects their authority and binding force, no distinction as to its legislation and the acts of its judiciary. In respect to the former, to give sanction to it in the same way when the rightful authority has been re-established, and in doing so, it has been considered a proper and legitimate exercise of admitted power to ratify it, with only such exceptions and modifications as the rightful authority might see fit to make. The convention of 1865 put judicial proceedings on the same footing with legislative acts, and prescribed a means by which unjust judgments might be opened in the same ordinance, which, in ratifying laws, made exceptions, and allowed, in some cases, laws and acts to be tested in the courts.

Undoubtedly, the general disturbed condition of the country, incident to a state of war, and the confusion resulting from derangement of government, constituted the chief reasons for allowing decrees and judgments to

be opened in cases where the parties litigated voluntarily in regard to private rights. It is the just middle ground between total abrogation and indiscriminate ratification. The allowance of a new trial destroys no right. It gives the opportunity of ascertaining the righteousness of judgments under circumstances presumed to be more favorable to investigation.

In respect to these conditions, the rule is, that, where the re-established rightful authority is silent as to the acts, judicial or legislative, of the intervening usurped authority, the public law recognizes, in matters not affecting sovereignty or the question of supremacy or legitimacy, the validity of judgments of courts—the parties litigating voluntarily—if organized government existed, but it is not questioned by any one that the re-established rightful government may, if it sees fit, abrogate or annul all public acts, or all acts done by the authority of the illegal government, though this course may be justly condemned. When the political authority has, by a simple act of power, thus annulled an act, the judiciary must, of necessity, acquiesce, and certainly where, instead of this cruel violence, there has been a great discrimination and a wise conservatism, the judicial power will not be the less constrained to yield.

The judgment here was rendered during the existence of usurped authority, and though we may question the validity of the ordinance of 1868 as to decrees rendered after the usurped authority ceased, it cannot be questioned as to those rendered by that usurped authority.

This, therefore, is not a case which falls under the operation of any doctrines respecting the power of the legislature to deal with past judgments and decrees of courts. But, assuming that it is a case in which the feature of usurped authority is not to be found, the ordinance, though retrospective, is purely remedial, and, therefore, valid. Carson v. Carson, 40 Miss. 349.

The ordinance cannot be assailed as a judicial act by a legislative body. The convention did not grant new trials. It provided by law for the granting of new trials by the courts on a proper showing by a party to the suit. The objection that the ordinance is an act of pure legislation, by a convention called to frame a constitution, is of little weight. The convention was a legislative body of the highest authority, and if precedent and custom are of any value in such matters, it may be affirmed that the power of conventions to make ordinances in the nature of legislative acts is established, for very few have ever met which failed to legislate, not generally, but on subjects deemed to be of pressing importance. It was the imperative duty of the sovereign convention of 1868 to fix the character of the illegal government. It would have been wrong to have left that duty to the courts, so as to vex the country for years with harassing doubts, and it would have been equally wrong to have left the matter to the legislature.

*Geo. L. Potter*, on same side, contended,

1. It seems clear that a law or ordinance granting a new trial or re-hearing in a case where such right was gone or never existed, is not objectionable as impairing the obligation of a contract. Such proceeding affects the remedy only and not the contract. Citing and commenting on Kauffman v. Bank of Kentucky, 40 Miss. 31–2; Briscoe v. Anketel; 28 ib. 371–2; Stephenson v. Osborn, 41 ib. 119; Balt. & O. R. R. Co. v. Nesbitt, 10 How. 395; Lampayneac v. United States, 7 Pet. 222; League v. De Young, 11 How. (U. S.) 185. This covers the whole question, and the principle declared is of general application; for in every case, the judgment, being final without such new remedy, is conclusive evidence of the validity of the demand. Colder v. Bull, 3 Dall.; Saterlee v. Matthewson, 2 Pet.;

Watson v. Mercer, 8 ib. 210. Also citing Colby v. Dennis, 36 Me. 9 ; *Ex parte* Norton, 44 Ala. 177.

2. As to the power of the convention to enact such an ordinance, there can be no doubt. It was empowered expressly to establish " a constitution and civil government," and its authority was wholy unrestricted, except to certain particulars not material to this question. In the then condition of the state, some such provision was necessary. The convention was called on to rebuild after civil war. It was proper to confine some things done in that time of violence and confusion, and in some cases to provide modes of redress. Such things were within the declared objects of the convention. The laws, judgments, etc., passed during the rebellion were of no validity without subsequent confirmation. Thomas v. Taylor, 42 Miss. 707 ; Martin v. Hewett, 44 Ala. 624–5 ; Noble v. Callum, ib. 559 ; Chisholm v. Coleman, 43 ib. 204 ; Hawner v. Seldenridge, 2 W. Va. 274. If tried by the rule of those cases, the more serious question arises for appellee to answer—whether, apart from the implied recognition of this ordinance, she has any decree at all. But the power of the convention to pass such ordinances has been fully recognized. See Slaughter v. Culpepper, 35 Ga. 26, 28 ; State v. Seers, Phillips (N. C.) 149 ; High v. McHugh, and cases cited, 38 Ga. 285 ; Parker v. Shannonhouse, ib. 209 ; Rutland v. Capes, 15 S. C. (Richardson), 84. The objection that a state convention has no power to " legislate generally, more especially to make penal laws," was settled at an early day, and the power affirmed. 1 Va. Cas. 7, 9.

*John Handy,* for defendants in error.

TARBELL, J. :

In 1862 a decree was rendered in the probate court of Warren county against the plaintiff in error, as exec-

utrix of the estate of H. A. H. Lawson, deceased, in favor of the defendants in error, as distributees of the estate of Walter R. Puckett, deceased.   In 1863 the said Mary V. Lawson filed in the chancery court of Madison county her bill of complaint, praying that the said decree be set aside and a new hearing granted.   On the 7th day of April, during the April term, 1865, of the Madison county chancery court, the injunction granted in the last named cause was dissolved and the bill dismissed.   From this decree no appeal was taken or attempted, as far as appears.

On the 29th day of April, 1868, the constitutional convention of that year passed an ordinance, of which the following is a copy of section one:

" Be it ordained by the people of the state of Mississippi, in convention assembled, that in all cases where judgments in the circuit courts and decrees in the chancery or probate courts of this state have been rendered since the 9th day of January, 1861, and prior to this date, the party against whom such judgment or decree has been rendered, whether in a representative capacity or otherwise, shall be entitled to a new trial upon filing an affidavit that he or she had no attorney or counsel present at the time of the rendition of said judgment or decree, and that he or she believes that said judgment or decree is unjust."   This ordinance was not submitted to the people.

On the 16th day of March, 1870, a motion was entered in the chancery court of Madison county, under the ordinance above quoted, to set aside the decree of April 7, 1865, and for a re-hearing, which motion was overruled by the chancellor at a regular term of the court in July, 1870. . From the decree overruling the said motion, an appeal was taken to this court.

The question for our determination is as to the force and effect of the ordinance upon which the motion overruled was based.   The question, whether the judgments

to be affected are few or many, is of the very first magnitude, and is supposed, by the arguments of counsel, to involve, directly or remotely, the validity of the acts of the Confederate authorities; the powers of a constitutional convention; state and Federal constitutional provisions with reference to property, vested rights, contracts and due process of law, and the force and effect of retroactive laws.

As before stated, the decree sought to be opened in virtue of the ordinance of the convention of 1868, was rendered April 7, 1865. The suspension of the statute of limitations, by the act of December, 1862, expired April 2, 1867.

Conceding this statute to apply to bills of review and appeals, which it does not in terms, the time to file a bill of review expired April 7, 1869 (if not April 7, 1867), and the limitation of appeal terminated April 7, 1870 (if not April 7, 1867), the period within which a new trial or a re-hearing could be had by application to the court rendering the judgment or decree, had long before passed. In 1870, when the motion, the decree overruling which is under review, was made and decided, the constitution framed by the convention of 1868 had been ratified, and the state government organized thereby was in full operation. As to the decree sought to be annulled by ordinance, the court had full jurisdiction of the cause and the parties. At the date of the passage of the ordinance, it was too late to obtain a new trial or re-hearing by application to the court rendering the judgment or decree. The time within which to file a bill of review had also expired. But there was, perhaps, then open to the party the right of appeal. 40 Miss. 611. In all other respects, the rights of the parties had become fixed by the then existing laws of the state.

The constitutional convention of 1868 assembled under the authority of the laws of congress, popularly

known as the reconstruction acts of 1867. These acts conferred upon the convention power only to frame " a constitution of government in conformity with the constitution of the United States in all respects." Act of March 2, 1867. "And said convention, when organized, shall proceed to frame a constitution and civil government, according to the provisions of this act and the act to which it is supplementary." Act of March 23, 1867. Although, as incidental thereto, section eight, of the last named act provides, " that the convention for each state shall prescribe the fees, salary and compensation to be paid to all delegates and other officers and agents herein authorized or necessary to carry into effect the purposes of this act, not herein otherwise provided for, and shall provide for the levy and collection of such taxes on the property in such state as may be necessary to pay the same." At the time of the assembling of the convention and the passage of the ordinance under consideration, the "fourteenth amendment" to the constitution of the United States, which ordains that no state shall " deprive any person of life, liberty or property without due process of law," though not formally declared adopted until July, 1868, was, if not of itself, substantially the law of the land in other provisions of the Federal constitution, so far as concerns the case at bar. Amendments to Const. U. S., art. V.

With these preliminary statements, we are prepared to advert to our theory of the true solution of the question before us, our conclusion being based upon a most extended and patient examination of all the authorities within our reach. Upon such research, we are of the opinion that the ordinance above quoted is a judicial, and not a legislative act, and, therefore, unauthorized.

Adding the authorities consulted, we might here conclude this opinion; but the importance of the question involved, and its novelty in the jurisprudence of our state, lead us to a brief elucidation of the subject as it

presents itself to us. In doing this, we observe that the question in this case does not involve the power of a legislative body to enact retroactive laws; to give the right of appeal, or authority to the courts to entertain bills of review, whereby the then existing laws, the time within which to appeal or to file a bill of review, has passed; or, in a class of cases where no such right has before existed; nor, whether a legislative body can confer a discretion upon the courts to grant a new trial; but the proposition to be solved is, whether a constitutional convention, or any legislative body can, by an ordinance or statute, award a new trial absolutely. It is not material whether, in this case, the issue had passed into judgment, and beyond the time allowed for an appeal or writ of error; or for a motion for a new trial or re-hearing before the court rendering the judgment or decree.

The question presented being essentially peculiar to a country of constitutions and laws, the authorities referred to are exclusively American, and are found in three different periods of our history, viz.: 1. Pre-revolutionary; 2. From the adoption of the federal constitution to the late rebellion; 3. Adjudications to which reconstruction has given rise. (1.) Prior to the adoption of the federal constitution, certain of the state legislatures combined the character of a legislature and a court, exercising the powers of both. (2.) With the supremacy of the federal compact then obtained, the American policy or law of distributing the functions of government into executive, legislative and judicial departments, and prohibiting the exercise of the duties of one by the other, or by either of them. (3.) Reconstruction, as a necessity of the late war, was altogether novel, and the problems thence arising anomalous. The first period furnishes, for the ordinance in question, but one precedent, fully referred to hereafter. During the second period we are not aware that judicial acts were

ever successfully exercised by a legislative body, whether a legislature or a constitutional convention. Indeed, we are not aware that, during this period, judicial powers were ever assumed by a constitutional convention, though our means of information are not as ample as we could wish. Constitutional conventions, however, are recognized as possessing provisional, limited and preliminary powers of legislation; such, only, was the case of the Com. v. Dewdell, 1 Va. Cases, 7; but they are not known, any more than legislatures, to have exercised the judicial authority properly cognizable by courts of law. (In short, the doctrine did not obtain that a convention of the people for the purpose of establishing a new, or of remodeling an old, constitution, any more than a legislature acting under the fundamental law could perform judicial acts.) Where attempted by legislatures, such acts have been resisted, denounced, and generally defeated. In the older states the courts have been exceedingly tenacious of the rights of the respective departments of government, and particularly zealous of the legislative encroachments upon the jurisdiction of the judiciary; illustrated in a case where a resolve of the legislature of Massachusetts "empowered" a judge of probate to take an administration bond in a mode differing from that prescribed by the general statutes, in which the court said : " It is not imperative, and if it were it would be unconstitutional." 5 Pick. 65. (The period of reconstruction furnishes abundant evidence of the absence of consultation and concert between the conventions, legislatures and courts of the several reconstructing states upon the grave questions presented by the situation. The result is a diversity of measures and decisions, as wanting in harmony and uniformity as in consistency and commanding precedents) It is understood that, at an early day, the policy of Louisiana indicated the extreme of the theories of reconstruction, as to some of the questions involved;

but those views failed to be controlling. 20 La. Ann. 152, 199, 234, 254, 412. The decisions of the courts of Alabama are construed to be flatly contradictory upon leading measures growing out of reconstruction in that state. 44 Ala. 171, 178, 418, 554, 248; 41 ib. 153; 40 ib. 547; 43 ib. 173, 224, 434. The adjudications granting new trials in causes which had passed into judgment in the Confederate courts, proceeding, as we understand them, upon the idea of a discretion confided to the reconstructed courts (44 Ala. 177, 248); which is not the theory of the ordinance under consideration, nor the theory of the same subject in Georgia, Florida or Arkansas. In Arkansas the decisions are also conflicting. 24 Ark. 286; 26 ib. 598, 545, 586. Hawkins v. Filkins, 24 Ark. 286, was decided with reference to an ordinance of the convention of 1864, while the cases in 26 Ark. were under the later and not much different provisions of the convention of 1868. But the question there was as to the validity of judgments of the Confederate courts, and not the right by an ordinance to grant a new trial. The convention of Florida promulgated an ordinance annulling judgments and granting new trials; but, upon appeal to her courts, these provisions were declared void. In fact, in that state, the terms of such an ordinance were inserted in the constitution, which was ratified by the people; yet the provision was held by the courts to be void. Am. Law Reg. Oct. 1871, vol. 10, No. 10, p. 647, note. In Georgia, the obstacles to annulling judgments and granting new trials by ordinance or statute were evidently appreciated; and hence in that state there was no attempt to annul or open judgments directly. But it was provided that, as to judgments during the war, an issue should be made up to determine an asserted defense which a party had been deprived of interposing, and, in case of payment, set-off, or other defense, the amount found by the jury upon such issue was applied

in reduction of the judgment, while its validity and lien remained undisturbed. This law was sustained by the courts, the proceeding being by petition in the nature of a bill in equity. Laws of Ga. 1869, No. 115, p. 133; 40 Ga. 493, 501, 698. (Thus, the period of reconstruction failed in establishing precedents of a character necessary to sustain the ordinance before us; but there are not wanting numerous adjudications during this time by the courts of the reconstructing states, holding that judicial acts by legislative bodies are illegal and void) 24 Ark. 91; 37 Ga. 158; 40 ib. 493; 41 Ala. 153; 12 Fla. 191; 25 Ark. 625; 20 Gratt. 31; 37 Ga. 124; 43 Ala. 173, 224, etc. (In fact, the decisions are uniform, not only in the southern states, both before and since the war, but in every state in the Union, that a legislative body is not invested with authority to perform judicial acts.

The cases cited in support of the action of the convention of this state may be here briefly referred to. A single case is presented where the legislature of Connecticut, in 1795, granted a new trial in a cause wherein the time for appeal had passed; a few cases indicate the power of a legislature, by retroactive laws, to allow the right of appeal, where the time has expired, or never existed; and others are precedents for laws conferring upon courts a discretion to entertain bills of review, where the time to file them has passed, or where the right was not before provided for; but these authorities are believed to be exceptional and special, or inapplicable to the case at bar, and in no way establish the doctrine contended for by the plaintiff in error. The earliest adjudication cited, is that of Colder v. Bull, 2 Root, 350, decided in 1796. The legislature of Connecticut having granted a new trial in a cause in the court of probate, on appeal, the court of last resort said : " The power of granting new trials was ever exercised by the general assembly of this state;" show-

ing that the power was placed upon usage and custom, and the union of legislative and judicial functions in the legislature, or "general court," as the legislature was sometimes called. It is an important fact, that at the time the legislature of Connecticut granted the appeal in that case, their authority was derived from the charter. The people of the state had not then framed a constitution. Several of the judges, in giving their opinion, relied on this circumstance and the usage, showing that the legislature had long exercised this species of judicial power. Such was the view taken of that case in 1 N. H. 199, and 3 Me. 326; in both of which its authority, as a precedent, was questioned and disallowed. The legislature of Kentucky passed an act granting the right of appeal in a certain class of cases, making the law retrospective, as well as prospective. An appeal being taken in a case wherein there was either no right of appeal, or the time allowed for appeal had expired, which is not clear, the appeal was sustained, the court citing Colder v. Bull, only. Henderson & Nashville R. Co. v. Dickerson, 17 B. Mon. 173. But that is not the case at bar. The Balt. & Sus. R. Co. v. Nesbitt et al. 10 How. 395, was this: The legislature of Maryland granted a charter to a railroad company, in which provision was made for the condemnation of land; a jury to assess the damages; confirmation by the county court; and upon payment of the award of the jury, title to vest in the railroad company. Damages had been assessed and awarded, but neither payment nor tender had been made by the company. In this condition of the case, the legislature authorized proceedings *de novo,* and the law was sustained upon the ground that the proceedings were *in fieri*; no title had been divested or vested; and the right of the parties had not become fixed. The award was made in 1836. The re-hearing was authorized in 1841, after a delay of five years on the part of the rail-

road company to pay or tender the award. League v. Young, 11 How. 185, brought in question certain laws of Texas prior to her admission into the Union as a state, and the case is otherwise considered clearly not a precedent for the ordinance in question. Watson et al. v. Mercer, 8 Pet. 88, involved only the power of the legislature of Pennsylvania to cure, by subsequent legislation, a defective acknowledgment of a deed, otherwise *bona fide* and effective. Satterlee v. Matthewson, 2 ib. 380, involved the validity of a law passed by the legislature of Pennsylvania, as applied to a pending suit, declaring the relation of landlord and tenant to exist, when, upon a certain state of facts, it did not exist before; the legislation, in this instance, growing out of the perplexing existence of one rule for citizens of the state, and another for " Connecticut settlers," who, it seems, had " a law unto themselves," presenting the anomalous condition of a community in one state governed by the laws of another. The case is hardly a precedent for the one at bar, as will be more apparent by reference to S. & R. 133. The legislation complained of and sustained, was in defense of the sovereignty of the state against the assumptions of settlers from another, which legislation, at most, only placed all residents within her borders upon an equality before her laws. Lampereynac & Stewart v. the United States, 7 Pet. 222, presented these facts : A decree in the territorial courts of Arkansas against the United States, in favor of a party claiming under a fictitious person, upon forged title papers, and a perjured witness. After the expiration of the time to appeal, congress by law authorized bills of review to be filed in a certain class of cases, within which this was one. The supreme court of the United States held that the law referred to was " in no respect the exercise of judicial powers; it only organizes a tribunal with the power to entertain judicial proceedings ; " wherein the law of con-

gress differed from the ordinance under consideration. In 1852 the legislature of Maine enacted a law allowing writs of "review" in cases where "the defendant had obtained his discharge in bankruptcy before or subsequent to the rendition of the judgment, provided the cause of action accrued before the proceedings in bankruptcy, and that the claim or demand was of such a character as would be barred by a discharge in bankruptcy." This statute was repealed the year succeeding its enactment. The granting of the review was made peremptory on a case conclusively within the statute; and the law applied to all such cases, without regard to the time which had elapsed between the judgment and the petition. Notice of an application for a review was required to be given to the opposite party, and there was a day in court when both parties could be heard on the motion for a review. Aside from this statute there was no appeal in the cases therein provided for. This statute was sustained in Colby v. Dennis, 36 Me. 9, upon very doubtful reasoning; and in Atkinson et al. v. Dunlap, 50 Me. 111, the case of Colby v. Dennis was qualified and limited, and clearly questioned. The last-named case was this: Judgment in 1850; petition for review dismissed; in 1859, after expiration of period for review or error, a law was enacted by the legislature allowing a review in cases where the judgment rendered was based upon perjury, to be established, on petition, to the satisfaction of the court, both parties having a right to be heard on the application for review; petition for review under this statute; review refused on the ground that the statute was prospective and not retroactive; if retroactive, the act was unconstitutional. It was said by the court, that, "the legislature, undoubtedly, has constitutional jurisdiction over remedies; but, after all existing remedies have been exhausted, and rights have become permanently vested, all further interference is prohibited." It was

further declared, that, " a judgment of a court becomes final when, by the then existing laws, the time for a review and for reversal for error has expired; it then becomes a vested right, by force of the constitution and the existing laws; and a statute designed to retroact on such a case, by reviving the right of review, is unconstitutional and void." And it was further stated, that, " in 1850, judgment had been rendered for the respondent, which became a verity, subject only to a reversal on error within six years after the entering up thereof, or to be reviewed within three years from that time; both of which contingencies had transpired before the subsequent proceedings hereafter to be considered, and consequently that judgment by the then existing laws became permanent and effectual forever. And why should it be otherwise? *   *   * It had passed the time of reversal for error, and the ordeal of two petitions for review, and the statute of limitations had forever barred its further interruption; or, in other words, by force of the constitution and the existing laws, that judgment had become a vested right, and incapable of annihilation except by payment and satisfaction. *   *   * If a review of such judgments may be ordered for one cause, it may be equally so for another, or any cause within the discretion of the legislature. Then the salutary maxim of the common law, '*finem litibus imponit*,' would become obsolete, when all cases heretofore settled by the most solemn adjudications known to the law, involving all rights and titles acquired under them, might pass in review before a subsequent tribunal, long after witnesses had deceased or their memories had become impaired." Referring to the petitioners for review, the court say: " Their days in court had terminated, all legal remedies exhausted, and the time had arrived when their opponent, protected by the law, could repose in common with all other citizens whose rights had vested, after much tribulation."

Similar views, expressed in Prop'rs Ken. Purchase v. Labarn, 2 Me. 273, are approved in 50 Me. 111. In Burch v. Newbury, 6 Seld. 394, of the same character with those last referred to, it is said: " The misfortune of having vested rights, under judgments and decrees of our courts, thus disturbed, is far from being trivial, if we consider, on this principle, no judgment whatever in a court of law can be rested upon as final." The supreme court of the United States, in the State of Pennsylvania v. The Wheeling & Belmont Bridge Co. 18 How. 421, say: " But it is urged that the act of congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of the plaintiff. This, as a general proposition, is certainly not to be denied, especially as it respects adjudications upon the private rights of parties. When they have passed into judgment, the right becomes absolute, and it is the duty of the court to enforce it. The case before us, however, is distinguishable from this class of cases so far as it respects that portion of the decree directing the abatement of the bridge." The court then proceed to show that the rule, thus indorsed as inviolable, is not in that case invaded.

Two considerations are invoked in support of the claim of the plaintiff in error, which demand attention. 1. The supposed enlarged, if not unrestricted, powers of a constitutional convention.   2. The character of the government at the time of the rendition of the judgment in which a new trial is sought.

As to the first. (A constitutional convention is convened to build up, not to tear down ; to protect, not to destroy,  Our American system is peculiarly one of established, regulated law. (If, in our system, there is any one feature pre-eminently prominent, it is a sacred regard for law and private rights)  A part of the American system, impressed alike upon the people and the

states, is the distribution of powers into legislative, executive and judicial. Although a constitutional convention represents the sovereignty of the people, this sovereignty is subordinate to the constitution of the United States and to the great American doctrines of justice, truth, right and law. Even in their sovereign capacity, the people do not possess the license of the *commune* on the one hand, nor absolute, unrestricted power on the other. Delegates are unrestricted as to the propositions they shall submit to the people; but even ratification does not validate violations of the national constitution, of law, and of rights already established. With the adoption of the Federal constitution, arbitrary power, which had theretofore defied the rights of persons and property, was denied an existence, whether in national or state governments, or with the people in their sovereign capacity; and there was ordained a sacred and inviolable separation of legislative, executive and judicial authority. These principles are, with us, fundamental, and cannot be disregarded by a constitutional convention any more than the legislative, executive or judicial departments of a government can exercise the powers of each other. When they do, their acts are void.

In regard to the second. Dealing with the delicate questions growing out of the war, we have deemed it the course of wisdom and justice to follow, as far as we could understand it, the spirit of the solution of these matters furnished by the supreme court of the United States, rather than precedents of some of the states. These appear to have pursued the policy of political passion, or followed theories, correct perhaps in the abstract, to impolitic, if not unwise conclusions. At any rate, whether right or wrong, we have not been disposed to act upon extreme views in adjudicating the rights of parties, but have treated, as valid and binding, without constitutional or legislative approval, the con-

tracts of individuals, the judgments of the courts and the acts of the legislature during the existence of the Confederacy, in all matters of a business and domestic character, not involving directly hostility to the rightful government. (Pursuing the rule by which we have thus far been guided, we are not prepared to hold, as the courts of some of our sister states have done, with reference to similar measures, that, because the judgment sought to be annulled for the purpose of a new hearing was rendered by a court acting under the insurrectionary government, affords a sufficient basis to legalize the ordinance herein before quoted.

In view of the subject under review, we remark:

1. If a legislative body may grant a new trial, it may order a continuance, annul a judgment, suspend a trial, direct the judgment to be entered, and otherwise interfere with the discretion and independence of the judiciary. The evils that would flow from such an assertion of legislative power are too apparent to be enumerated, and need not be here undertaken.

2. Placing the solution of the case at bar upon the sole ground of a usurpation of judicial attributes by the convention, we waive, as unnecessary, a discussion of the vexed questions of vested rights, the obligation of contracts, retrospective legislation, due process of law, property in judgments, remedial laws, with incidental and kindred matters propounded and discussed in nearly every case involving any one of this family of questions, and by which cases we are sustained in the result herein arrived at.

3. The right of the restored governments to annul, re-open or evade the judgments of the Confederate courts—whether, if those judgments were void, they could be made valid by the approval of the restored governments—and the wisdom of interfering with those judgments, if the right to do so were conceded, are questions which are discussed and variously acted upon

in, at least, the states of Arkansas, Mississippi, Alabama, Georgia and Florida, and in what manner, and with what result, we have before shown. The only basis of a right to annul, as in Florida and Arkansas, to grant new trials in the discretion of the reorganized courts, as in Alabama, was upon the character of the governments under which those judgments were rendered, the illegality of the right thus to interfere being conceded, except for this cause; otherwise, admittedly indefensible. In Georgia, this fatal obstacle was obviated, as we have seen, to the satisfaction of the courts of that state, at least; whether rightfully, is not for us to determine. [Suffice it, that the action of the Mississippi convention was unlike that of the states' whose measures were sustained.]

Without further discussion, we append the authorities coming under our observation in the examination of this case. Adjudications bearing more directly upon the power of a legislative body to perform judicial acts: 15 Penn. St. 18; 10 N. Y. 396; 1 N. H. 199; 2 Chip. (Vt.) 77; 7 Humph. 152; 9 Gill. & J. 365; 39 Penn. St. 146; 43 ib. 512; 3 R. I. 299; 4 ib. 324; 2 Allen, 361; 11 Penn. St. 490; 37 Ga. 158; 40 ib. 493; 3 N. Y. 511; 3 Me. 335; 4 Ind. 301; 3 Scam. 238; ib. 469; 5 Gilm. 417; 26 Cal. 135; 36 Me. 9; 50 ib. 111; 5 Pick. 65; 6 Selden, —; 3 Mich. 436; 21 ib. 390; 10 Md. 478; 18 ib. 193; 8 Blackf. 10; 24 Ark. 91; 33 Cal. 279; 16 ib. 11; 17 ib. 547; 10 Yerger, 59; 5 Humph. 165; 41 Ala. 153; 1 Daniel Ch. (Vt.) 237; 10 How. 395; 7 Peters, 222; 11 How. 185; 2 Peters, 380; 8 ib. 110; 35 Ga. 26; 38 ib. 285; Phillip (N. C.), 149, 209; 15 S. C. (Richardson), 84; 21 La. Ann. 325; 44 Mo. 570; 7 Caldwell, 15; 32 Texas, 1; 43 Ala. 173, 224. Whether a judgment is property and a vested right: 2 Wendell's Blackstone, 396, 436, 464; 2 Kent (11th ed.), 432, 487; 50 Me. 111; 12 N. Y. 209; 4 Dev. 15; 16 Penn. St. 266; 17 B. Monroe, 176; 1 Mich. 56; 10 Cal.

305; 4 Barb. 64; 12 Coke, 1; 1 Atkins, 182; 1 P. Wms. 267; 6 How. (U. S.) 301; Potter's Dwarris, 479; Cooley Lim. 33, 94, 361, 355, 569. Vested rights and the obligation of contracts: 12 N. Y. 209; 4 Dev. 15; 4 Barb. 64; 10 ib. 223; 3 Mich. 436; 9 Gill, 302; 2 ib. 79; 6 Wend. 526; 7 Cal. 1; 16 ib. 11; 15 ib 515; 10 ib. 305; 9 ib. 81; 2 ib. 524; 40 Ala. 547; Phillips (N. C.), 200; 7 Caldwell. Due process of law: 13 N. Y. 378; 11 Mich. 113; 3 N. Y. 511; 43 Ala. 224. Retrospective legislation (particularly as to granting the right of appeal where none existed, or where the time limited by existing laws has expired): 7 Johns. 477; 11 Mass. 396; 45 Me. 507; 2 Greenl. 275; 17 B. Mon. 176; 12 Wheat. 349; 3 ib. 28; 11 ib. 420; 8 Mass. 423; 13 Pick. 532; 7 Ind. 470; 7 Blackf. 154, 623; 8 ib. 56, 58, 116, 160, 177, 455; 1 Ind. 24; 2 ib. 65; 5 ib. 348; 8 ib. 533; 26 Cal. 46; 3 Vt. 502; 2 Aik. 284; 15 Ohio St. 207; 13 Wis. 37; 19 ib. 17; 1 Daniels' Ch. Pr. 77; 1 Aik. 314; 5 Tex. 433; Davis' Ind. Dig. 215, sec. 89; Phillips (N. C.), 410; 41 Mo. 63; 40 Ala. 547; 41 ib. 153. Judicial acts: 24 Ark. 91; 1 N. H. 199; 10 N. Y. 396; 41 Ala. 153; 43 ib. 173; ib. 224. Remedies: 1 E. D. Smith, 681, 739; 3 Mich. 436; 2 Gill, 79; 4 Cal. 127; 9 Wis. 559; 13 ib. 37; 19 ib. 17; 7 Tex. 348; 5 ib. 433; 4 Wheat. 122; 12 ib. 349; 7 Humph. 130; 2 Ala. 397; 1 Comst. 536; 1 McLean, 135; 8 W. & S. 49; 3 Denio, 247; Davis' Ind. Dig. 214, sec. 73; 30 Ala. 547; Story's Conflict of Laws, title, Remedies. Power of a legislature to divest vested rights: 4 Green (Iowa), 168; 2 ib. 94, 181; 6 Col. 650; 5 Tex. 442; 16 Ohio, 599; 17 ib. 125; 1 Aik. 264; 10 Yerger, 505; 1 Sneed, 83; 2 Swan, 273, 405; 7 Humph. 130. Whether a right has vested is a question for judicial determination: 7 Ind. 332; 1 Blackf. 220; 10 Barb. 223. A constitutional convention has no more power than a legislature (9 Yerger, 495,) and is limited to preliminary, temporary and provisional legislation;

as to which, see, generally, the authorities above cited, and the almost uniform practice of constitutional conventions before and since the late war. *Vide*, also, 1 Mich. 295; 34 Miss. 227; 38 ib.; 40 ib. 29; 41 ib. 119; 4 Wall. 277; 7 G. & J. 206; 39 Ga. 493; 18 How. 421; 2 Gall. 139; 2 How. 612; 15 Wis. 28; 8 Wheat. 17; 1 How. 311; 3 ib. 707; 56 Penn. St. 48; 2 Vt. 179, 517; 15 La. Ann. 153; 15 How. 304; 10 ib. 395; 11 ib. 185; 7 Pet. 222; 8 ib. 110; 43 Ala. 435; Sedgwick on Statutory and Const. Law; Walker's Am. Law; Pomeroy's Const. Law; Potter's Dwarris; Cooley's Const. Lim.; Story on the Constitution.

It is believed that the ordinance under review is without a precedent, and without the support of an accredited authority in the United States. No day is given the opposite party in court to contest the motion for a new trial. In fact, no motion is required. Upon filing an affidavit of merits, and the absence of counsel at the rendition of the judgment or decree, a new trial is awarded, not by the court, but by force of the ordinance. Hence, we say it was a judicial act, and, therefore, unauthorized. Texas v. White, 7 Wall. —; Act of Cong., approved March 2, 1867, and the several acts supplementary thereto; Cooley's Const. Lim. 95, 369, 569, 413, 355, 569; Potter's Dwarris, 430; 12 N. Y. 209; 4 Hill, 147; 13 N. Y. 395; Hob. 85; 8 Coke, 118; 12 Mod. 669; 2 Chip. 77; 39 Penn. St. 146; 1 N. H. 204; 16 Penn. St. 266; 7 Humph. 152; 3 Johns. 299; Regents v. Williams, 9 G. & J.; 43 Penn. St. 512; 10 N. Y. 396; 2 Allen, 361; 37 Ga. 158; 11 Penn. St. 490; 39 ib. 137; 3 N. Y. 511; 12 ib. 209; 4 R. I. 324; 7 G. & J. 206; 3 Me. 326; 39 Ga. 493; 15 Penn. St. 18; 7 Johns. 477; 4 Ind. 301.

The decree appealed from, denying a new trial or rehearing in the case at bar, is affirmed.

A re-argument was applied for, but refused by the court.