Stone *v.* McKay Plumbing Co. *et al.*

(In Banc. May 27, 1946: Suggestion of Error Sustained April 14, 1947.)

[26 So. (2d) 349. No. 36144.]

J. H. Sumrall, of Jackson, for appellant.

W. E. Gore, of Jackson, R. L. Genin, of Bay St. Louis, J. M. Talbot, of Clarksdale, T. N. Gore, of Marks, and Tally D. Riddell, of Meridian, for appellee.

802

**W. E. Gore,** of Jackson, for appellees, on suggestion of error.

806

**T. N. Gore** and **Ney M. Gore, Jr.,** both of Marks, amici curiae on suggestion of error.

808

Argued orally by **J. H. Sumrall**, for appellant, and by **W. E. Gore**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

During the period involved in this action appellees were engaged in the plumbing business, and in their activities in said business, according to the allegations of the declaration, appellees "supplied materials and labor, and installed said plumbing and said heating plants, and supplied the instrumentalities for doing said work, and the gross income received therefrom was based on a fixed, lump sum price, for said material, labor and workmanship, and no part of said gross income was derived from the sale of tangible property and no part of said material was sold by the (plaintiffs) appellees to their customers." The allegations are further that the State Tax Commissioner demanded of appellees the payment of a sales tax on the gross income from said activities on the claim that there was involved therein the sale of personal property, which tax was paid by appellees and the action was to recover the amounts so paid, as allowed by Section 10122, Code 1942, as that section read when the action was instituted.

The facts as above stated were admitted, and on the trial the circuit court awarded judgment to the plaintiffs, which was correct as the law existed at the time of the rendition of the judgment, the transaction in question involving a work of service not sales of personal property, as was ruled by us in Singing River Tire Shop v. Stone, 21 So. (2d) 580, and as foreshadowed in Cook v. Stone, 192 Miss. 219, 5 So. (2d) 223.

The judgment was rendered on December 4, 1945, and the Tax Commissioner took an immediate appeal therefrom. Pending the appeal the Legislature, at its recent

session, amended the said Section 10122, Code 1942, the amended act having been approved on March 19, 1946, by which two limitations or provisos were annexed to the statute allowing suit against the State Tax Commissioner, these provisos being as follows:

"Provided, however, that in any such suit, the plaintiff must allege and prove that he alone bore the burden of the tax sued for, and did not directly or indirectly collect the tax from his customers. It being the declared purpose of this section to make certain that any taxes refunded will go to the one who has borne the burden of the illegal tax, and therefore is entitled in justice and good conscience to such relief, and is therefore the real party in interest. It shall not be necessary for the taxpayer to protest against the payment of the tax or to make any demand to have the same refunded in order to maintain such suit. In any suit to recover taxes paid or to collect taxes the court shall adjudge costs to such extent and in such manner as may be deemed equitable.

"Provided, further, that all suits to recover taxes under this section shall be filed within three years next after the payment of such taxes."

The real question before the Court is, therefore, what is the effect of the subsequent act of the legislature on the judgment herein rendered. Upon that inquiry two propositions are beyond the range of debate in this State, and the first is that no right of action exists against the State except as allowed and prescribed by statute, and this in express terms and not by implication; and the second is that an action against a state officer to recover money which except for the action would belong to the State, is an action against the State within the rule first stated. And it is further settled in our jurisprudence that when a right of action or remedy is created solely by statute and does not exist at common law, the repeal of the statute has the same effect as had the statute never existed; or, if the statute is modified or amended the effect is the same as had the statute previously existed all the while in the

same language as the amending act, unless there is a saving clause, and there is none here. Deposit Guaranty Bank & Tr. Co. v. Williams, 193 Miss. 432, 9 So. (2d) 638, and the cases therein cited.

Moreover, the effect of the rule is that it applies not only to actions already instituted, but also to any judgment rendered by the trial court under the old statute, but which judgment is covered by an appeal pending at the time of the repealing or amendatory enactment, it being the duty of the appellate court to decide the case according to the law at the time when the matter is acted on by that court rather than on the law theretofore existing. Musgrove v. Vicksburg & N. R. Co., 50 Miss. 677, 682, and compare Crow v. Cartledge, 99 Miss. 281, 54 So. 947, Ann. Cas. 1913E, 470. This is the rule which prevails as well in other jurisdictions, as may be seen by the text and the note cases, 59 C. J. pp. 1189, 1190, and 3 Am. Jur. pp. 668, 669, Sec. 1157.

It is sufficiently well settled also that a state's consent to be sued is not a contract and may be repealed or modified at any time even though pending suits are thereby defeated. 59 C. J. p. 306, and cases there cited. The rule is more fully stated in 49 Am. Jur. p. 316, Sec. 99, as follows:

"After the legislature enacts a statute giving the consent of the state to the bringing of suits against it, it may at any time it thinks proper withdraw that consent and thus deny the right of a suitor to maintain an action against the state, or it may change the condition under which it will permit the state to be sued. It may withdraw the consent or change the conditions and requirements after a claim against the state arises, and make it effective as to that claim, and even after suit is instituted on a claim the state may withdraw its consent or impose different conditions, thus causing the abatement of the pending suit. A change in the conditions upon which the consent of the state to suits against it may be invoked, or the withdrawal of that consent, does not, although made

effective as to existing claims, impair the obligation of contracts. . . ."

It follows from what has been said that the amended act abates the action as to all payments made more than three years before the suit was filed, and that as to those not barred the plaintiffs must allege and prove that they alone bore the burden of the taxes sued for, that is, that they themselves paid it, and did not collect it from their customers.

Reversed and remanded.

**Roberds, J.,** delivered the opinion of the court on suggestion of error.

After mature consideration, Judges ALEXANDER, McGEHEE and the writer think the judgment in this case should be affirmed. The other three members of the Court are of the opinion that the judgment should be reversed because of the provisions of the act of the Legislature quoted in the original opinion herein. That situation results in an affirmance of the judgment below, and a sustaining of the suggestion of error.

Appellee contends mainly that the limitations prescribed by Section 10, Chapter 262, Laws 1946, quoted in the original opinion herein, (1) are not retroactive, but, if so, the provisions violate the Constitution and are invalid because (2) one provision reduces the time from six to three years within which suit may be brought to recover the tax; and (3) the other undertakes to deprive appellee and any others like situated of a vested right under a final judgment. It is the opinion of a majority of the Court that the first two contentions should not be sustained, but the three judges above named think the third contention is well taken. This opinion presents their views on that question.

The judgment in the lower court adjudicated that appellant owed appellee a sum of money. On the appeal here, this Court stated [26 So. 2d 350] ". . . and on

the trial the circuit court awarded judgment to the plaintiffs, which was correct as the law existed at the time of the rendition of the judgment . . ." In other words, on the merits of this case, there was no ground for reversal and the judgment of the lower court was correct. If we reverse the lower court and set aside its judgment, it will be because of the passage by the Legislature of the act in question. That act, and that act alone, will divest the judgment creditor of all rights under the judgment, and as it appears from the briefs, will prevent that creditor from recovering any other judgment hereafter. This situation presents three questions: (1) Did the judgment of the court below confer upon appellees a vested right; (2) if so, can that right be taken away by legislative fiat; and (3) whether the fact that the State is a party to the suit changes the rule and the effect resulting from the legislative act.

On the first question, this Court in Lawson v. Jeffries, 47 Miss. 686, 12 Am. Rep. 342, quoting from Colby v. Dennis, 36 Me. 9, in referring to a final judgment in the lower court, said: ". . . in other words, by force of the constitution and the existing laws, that judgment had become a vested right, and incapable of annihilation except by payment and satisfaction."

In the famous case of McCullough v. Commonwealth of Virginia, 172 U. S. 102, 19 S. Ct. 134, 43 L. Ed. 382, the Supreme Court of the United States said: "A rightful judgment against the state gives a vested right . . ."

Specifically, appellee had a right to the money. The State of Mississippi owed it, and this Court, in its opinion, said the lower court was correct. It is impossible to escape the conclusion that this judgment conferred upon appellee a vested right. If other authority is needed to support that conclusion, it will be found in the quotations from other cases hereinafter discussed.

If that be true, can these rights be taken away merely by legislative fiat? Article V of the Constitution of the United States provides that one may not "be deprived of

life, liberty, or property, without due process of law." Article XIV, Sec. 1, prohibits any order depriving "any person of life, liberty, or property, without due process of law." Section 14 of the Mississippi Constitution provides: "No person shall be deprived of life, liberty, or property except by due process of law."

The holdings of the Mississippi Court are in accord with our conclusion. In Stewart v. Davidson, 10 Smedes & M. 351, this Court said: "The legislature cannot open or reverse a judgment rendered according to existing laws. This is judicial power. And if they could authorize this to be done by bill of review, they could prescribe any other mode, and thus strip judgments of their solemnity."

In Hooker v. Hooker, 10 Smedes & M. 599, this Court observed: "Indeed, the power of the legislature to open a judgment, and unsettle rights previously ascertained and declared by a competent tribunal, would hardly be asserted."

In the case of Garrett v. Beaumont, 24 Miss. 377, this Court further observed: "If the legislature can give a party a defense which did not exist against a suit, at the time it was commenced, it is difficult to see why it could not in a more direct mode, and, equally as consistent with justice and equity, order the plaintiff to dismiss his suit."

In Adams v. Tonella, 70 Miss. 701, 14 So. 17, 20, this Court said: "It has long since been decided in this state that it is not within the legislative power to provide by retroactive legislation for the reopening of judgments final in their nature, and under which rights had become vested."

In Lawson v. Jeffries, supra, the Court remarked: "If a legislative body may grant a new trial, it may order a continuance, annul a judgment, suspend a trial, direct the judgment to be entered, and otherwise interfere with the discretion and independence of the judiciary. The evils that would flow from such an assertion of legislative power are too apparent to be enumerated, and need not be here undertaken."

Nor does Musgrove v. Vicksburg & Nashville R. R. Co., 50 Miss. 677, cited in the original opinion herein, hold to the contrary. In that case, this Court, in part, said: ". . . if rights have accrued and become vested under a law, a subsequent repeal shall not operate to destroy or divest them. Whatever has matured into, and become vested as a right of property or a right to a chose in action, as a bond or other security or credit upon the faith of a law, a subsequent repeal does not annihilate the right, especially when held by third persons. We accept the doctrine of the law to be, that the repeal of a statute necessarily terminates all proceedings under it, unless rights have accrued which can not be divested."

Nor does Crow v. Cartledge, 99 Miss. 281, 54 So. 947, 948, Ann. Cas. 1913E, 470, in our opinion, hold otherwise. In referring to the effect of a repealing statute upon the statute repealed, the Court said the repealed statute "is considered as a law which never existed, except for suits which were commenced and concluded while the repealed law was in force."

49 Am. Jur. 316, Sec. 99, states the general rule to be that: "Where, however, a judgment against the state has given a vested right, such right cannot be taken away by the repeal of a statute which authorized the state to be sued."

That is the rule which is announced by the Supreme Court of the United States, which, of course, is the final authority on the question.

In McCullough v. Commonwealth of Virginia, supra [172 U. S. 102, 19 S. Ct. 142], that Court said: "But there are more substantial reasons than this for not entertaining this motion. At the time the judgment was rendered in the circuit court of the city of Norfolk the act of 1882 was in force, and the judgment was rightfully entered under the authority of that act. The writ of error to the court of appeals of the state brought the validity of that judgment into review, and the question presented to that court was whether, at the time it was rendered, it was

rightful or not. If rightful, the plaintiff therein had a vested right, which no state legislation could disturb. It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases."

In Hodges v. Snyder, 261 U. S. 600, 43 S. Ct. 435, 436, 67 L. Ed. 819, that Court again said: "It is true that, as they contend, the private right of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, . . ."

In Hoyt Metal Co. v. Atwood, 7 Cir., 289 F. 453, 455, the Circuit Court of Appeals quoted the following statement: "A judgment is such a vested right of property that the Legislature cannot by a retroactive law either destroy or diminish its value in any respect."

To the same effect is the holding in the case of Forbes Pioneer Boat Line v. Board of Com'rs of Everglades Drainage District, 258 U. S. 338, 42 S. Ct. 325, 66 L. Ed. 647.

We consider the case of Ettor v. City of Tacoma, 228 U. S. 148, 33 S. Ct. 428, 57 L. Ed. 773, directly in point. Ettor sued the City of Tacoma for damages to his abutting property in consequence of an original street grading done by the City of Tacoma. At the time the grading was done, there was in force an act of the Legislature of the State of Washington which required the city to make compensation for consequential damages due to an original street grading. Before passage of that act, it had been held that municipalities were agents of the State in making such street gradings and were not liable for damage resulting therefrom. In other words, without the existence of the legislative act, the municipality was not liable and Ettor could not have recovered, but under the act he did have a right of recovery. While the case was being tried, the Legislature amended the act "so as to

provide that the act should not apply to the original grading of any street." In other words, the Legislature, by special act, attempted to take away from Ettor the right to recover damage he had previously sustained. "When the attention of the trial court was called to this repealing act, it directed a verdict for the city upon the theory that the right of action was statutory and fell within the statute, there being no saving clause. This judgment, upon the same ground, was affirmed by the supreme court of the state." The Court, in reversing both the trial court and the Supreme Court of the State of Washington, speaking through Mr. Justice Lurton, used this language:

"The necessary effect of the repealing act, as construed and applied by the court below, was to deprive the plaintiffs in error of any remedy to enforce the fixed liability of the city to make compensation. This was to deprive the plaintiffs in error of a right which had vested before the repealing act,—a right which was in every sense a property right. Nothing remained to be done to complete the plaintiffs' right to compensation except the ascertainment of the amount of damage to their property. The right of the plaintiffs in error was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation." That case goes beyond the facts of the case at bar. There, the act was passed before the judgment was obtained. Here, the judgment was obtained before the act was passed. We limit our holding to the facts of this case.

It should be borne in mind that in this State an appeal does not ". . . vacate the judgment or decree." If the appeal is with supersedeas, execution on the judgment is suspended; if the appeal is without supersedeas, the successful litigant may proceed immediately to execute on the judgment. In no case does the mere fact of an appeal affect the validity of the judgment in the lower court. It remains valid and legal until and unless the Supreme Court holds otherwise. Section 1147, Code 1942.

As to the third question, it is contended that the act under consideration simply changes the rule of procedure, and that the Legislature, having theretofore conferred the right to sue the State, had the power to withdraw that right in this case. The act does more than change the procedure. It undertakes to compel the court to set aside the judgment and to divest appellee of its right to the money to which it is entitled under the judgment, and, as applied to the facts of this case, to prevent appellee from again obtaining a similar judgment.

In Hoyt Metal Co. v. Atwood, supra, the Court said: ". . . if statutes, professing only to affect procedure or remedy, do in fact thereby affect or impair the right, they are void or inapplicable as against the enforcement of the right thus impaired." To the same effect see Duke Power Co. v. South Carolina Tax Commission, 4 Cir., 81 F. (2d) 513, writ of certiorari denied 298 U. S. 669, 56 S. Ct. 834, 80 L. Ed. 1392.

The very question under consideration was presented and urged in McCullough v. Commonwealth of Virginia, supra. This quotation from the syllabi sums up the Court's response to that contention: "A rightful judgment against the state gives a vested right which cannot be taken away pending writ of error, by a repeal of the statute which authorized the state to be sued."

In addition to this, it will be noted that this statute does not undertake to deprive the taxpayer of the right to sue. He continues to have the right to sue. It simply changes the rules of the game after the game is over.

Practically all of the cases appearing to hold that the Legislature can, by retroactive statute, withdraw, or modify, the right to sue, or proceed against, the State will be found, upon examination, to involve torts, fines, forfeitures, penalties, or the withdrawal, modification or transfer of power of some board or commission as an agency of the State, or the statutes under consideration became effective before rendition of judgment between the parties, or they alter or change some remedial power,

such as mandamus or injunction, which is incidental to the enforcement or preservation of the principal right sought to be established. They are not cases in which the courts have divested individuals of vested rights pursuant to mandates of retroactive statutes.

The crux of this situation—the point on which the case turns—is that the rights of the parties had been finally fixed and adjudicated by the judgment of the court, subject to review by this Court on the merits of the case as presented to the lower court. This Court said there was no error on the merits. The Legislature undertakes to wipe out the judgment by a legislative act.

Is the obligation of the State less sacred than that of an individual?

Finally, it is not irrelevant to the question under consideration to observe that a preeminent feature of our government is, or should be, the sacredness of obligations and private rights. Both the Federal and our State Constitutions abolished the power of the sovereign to arbitrarily take away private rights. That power unrestricted is a tyrant. History had taught our forefathers that fact. That is why they tried to strip the sovereign of that power.

Suggestion of error sustained and judgment affirmed.

**Griffith, J.,** delivered a dissenting opinion on suggestion of error.

Three of us adhere to the original opinion, and while we could add page after page in the citation of texts and cases in the further support of it, we will content ourselves by references to, and brief quotations from, two of the texts which have been universally recognized as classics of the law in this country, and to a mention of the case nearest in point as well as the most recent in time that has been found.

In 2 Cooley's Constitutional Limitations (8th Ed.), p. 790, it is said: "And if a case is appealed, and pend-

ing the appeal the law is changed, the appellate court must dispose of the case under the law in force when its decision is rendered." And it is to be noted that among the cases cited in the footnotes to support the text is Schooner Rachel v. United States, 6 Cranch 329, 10 U. S. 329, 3 L. Ed. 239, a case cited in Musgrove v. Vicksburg & N. R. Co., 50 Miss. 677, 682, wherein this Court adhered to the rule as stated and which ought to be binding on all of us now.

The controlling opinion concludes to avoid the rule, however, by the assertion that the judgment of the trial court became on its rendition a vested right, and it will be observed that the foundation for that conclusion is laid upon a number of cases in this State where judgments and decrees, from which no appeal had been or then could be taken, have been held to confer vested rights—a proposition which none of us challenge. But that is not at all the case here. And if it is meant by the stated assertion, and it seems that the controlling opinion finally gets down to that meaning, that any judgment rendered in a trial court becomes then and there a vested right, regardless of the nature of the cause of action, and regardless of any appeal therefrom, then it is to deny the rule already established as the law of this State, and is against the great weight of authority throughout the country.

The right of action asserted here by appellee has no foundation in contract, such as was McCullough v. Commonwealth, 172 U. S. 102, 19 S. Ct. 134, 43 L. Ed. 382, and as were many of the other cases cited in the controlling opinion, nor is it based upon an interest in property, nor for damages done to property as was the case Ettor v. City of Tacoma, 228 U. S. 148, 33 S. Ct. 428, 57 L. Ed. 773, so confidently relied on in the controlling opinion. The right of action here is based solely on a statute, without which under the common law the payments made would be deemed voluntary, with no right whatever under that law to recover them. And being

based on a statute and solely thereon, it must have the support of the statute even until final decision by the appellate court,—save of course as to vested rights.

On this subject, after dealing with the proposition that the repeal or change of a statute does not affect vested rights, Lewis Sutherland on Statutory Construction proceeds on p. 548, as follows: ''This, is a principle of general jurisprudence but a right to be within its protection must be a vested right. It must be more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand. . . . If before rights have become vested in particular individuals, the convenience of the State induces amendment or repeal of the law those individuals have no right to complain. . . . And if the statute be essential to that judgment, its repeal or expiration after the judgment will necessitate a reversal of the judgment.''

The most cogent and scholarly opinion which we have found among all the cases is the recent case, People ex rel. Eitel v. Lindheimer, 371 Ill. 367, 21 N. E. (2d) 318, 124 A. L. R. 1472. A statute had been enacted by which a taxpayer could secure a refund for taxes erroneously paid, and the taxpayer had secured judgments in the trial court commanding the refund. There were appeals from the judgments, and pending the appeals the law was repealed. The contention of the taxpayers was that the appellate court should adjudicate the cases under the law as it existed at the time of the trial court judgments, and that not to do so would deprive the taxpayers of vested rights, —precisely the contentions made in the case now before us here. The Supreme Court rejected both contentions and reversed the judgments. The case was appealed to the Supreme Court of the United States where the appeal was dismissed ''for want of a substantial federal question,'' People of State of Illinois ex rel. Eitel v. Toman, 308 U. S. 505, 60 S. Ct. 111, 84 L. Ed. 432. In short, the

federal Supreme Court held that there had been no deprivation of a vested right, for if there had been, a federal question would have been thereby presented, under the due process clause.

The controlling opinion refers to the Supreme Court of the United States as the final authority on this question, with which we concur, and in the foregoing paragraph we bring forward the latest and last word of that Court on the precise point here before us, and that word is against the conclusion of the present controlling opinion herein.