HORNE *v.* STATE BUILDING COMMISSION, et al.

No. 40716 June 9, 1958 103 So. 2d 373

*deQuincy Sutton.* Meridian, for appellant.

*Vardaman S. Dunn, John E. Stone, Jas. T. Kendall,* Jackson, for appellees.

HOLMES, J.

This litigation arose out of contracts awarded by the State Building Commission of the State of Mississippi to Arthur Horne, d/b/a Horne Plumbing, Electric and Supply Company, in connection with the construction of the State Office Building and the Mississippi Schools for the Blind and Deaf.

On January 16, 1948, the State Building Commission awarded to Arthur Horne, d/b/a Horne Plumbing, Electric and Supply Company, a contract for the electrical work in connection with the construction of the State Office Building. The contract price was $257,456.00. Horne furnished a performance bond, dated January 21, 1948, in the amount of the contract with Western Casualty and Surety Company as surety.

On May 8, 1948, the State Building Commission awarded to Arthur Horne, d/b/a Horne Plumbing, Electric and Supply Company, a contract for the mechanical work, consisting of plumbing and heating, in connection with the construction of the Mississippi Schools for the Blind and Deaf. The contract price was $279,051.00. Horne furnished a performance bond for this job, dated May 8, 1948, in the amount of the contract with the same surety, Western Casualty and Surety Company.

In each instance, Horne executed to the surety a written application for the performance bond. The applications and the bonds were of like tenor and effect, except as to the amount and the work to be performed. The application for the bond on the State Office Building job was dated January 21, 1948. The application for the bond on the Schools for the Blind and Deaf job was dated May 8, 1948. The applications contained the following pertinent provisions:

(a) The principal agreed to indemnify the surety against all loss, costs, damages, expenses and attorneys'

fees, and against any and all liability sustained or incurred by the surety by reason of the execution of the bonds.

(b) The surety was to have the right and was authorized but not required to take possession of the work in case of default and to complete the same at the expense of the principal, or to contract for the completion of the same, or to consent to the reletting or completion of the contract by the obligee, and the surety was also given the right to adjust, settle, or compromise any claim or demand.

(c) The principal agreed to assign, and did assign, transfer and set over to the surety as collateral to secure the obligations of the bond, and any other indebtedness or liability of the principal to the surety, with said assignment to become effective as of the date of the contract, and, in the event of any abandonment, forfeiture, or breach of said contract, or of any breach of any bonds executed on behalf of the principal, or in the event of any proceeding which deprived the principal of the right to proceed with the contract, the assignment was then made to cover all rights of the principal in and growing out of the contract and any and all percentages retained on account of the contract, and any and all sums due under the contract at the time of abandonment, forfeiture, or breach, or might thereafter become due.

(d) It was provided that the liability of the principal should include all sums paid by the company on good faith under the belief that it was liable therefor whether liable or not.

(e) It was provided that in the event of such payment in good faith, an itemized statement thereof sworn to by any officer of the surety, or the voucher or vouchers of other evidences of such payment should be prima facie evidence of the fact of payment and the extent of the principal's liability.

The following provisions are quoted verbatim from the applications:

"That liability hereunder shall extend to, and include, the full amount of any and all sums paid by the company in settlement or compromise of any claims, demands, suits, and judgments upon said bond or bonds, or any of them, on good faith, under the belief that it was liable therefor whether liable or not, as well as any and all disbursements on account of costs, expenses, attorneys' fee, as aforesaid, which may be made under the belief that such were necessary whether necessary or not."

"That in the event of payment, settlement or compromise, in good faith of liability, loss, costs, damages, expenses and attorneys fees, claims, demands, suits and judgments as aforesaid, an itemized statement thereof, sworn to by any officer of the company, or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the undersigned, in any claim or suit hereunder, and in any and all matters arising between the undersigned and the company. . . . ."

The State Office Building job was completed according to contract and accepted by the State Building Commission on August 30, 1950, at which time there were retainage funds in the hands of the State Building Commission amounting to $43,812.36.

The general contractor on the project for the construction of the Schools for the Blind and Deaf was M. T. Reed Construction Company. Horne and the general contractor began work on this project under their respective contracts. The general contractor completed his work on or about February 2, 1950, at which time the Commission entered an order reciting the completion of the work of the general contractor, and setting forth that Horne should complete his work within ten days as provided by the contract. At a meeting of the Commission held on February 15, 1950, the architects on the project for the construction of the Schools for the Blind and Deaf presented to the Commission their certificates certifying

that Horne had failed to supply enough skilled workmen and proper materials to complete his contract within the required time and had failed to comply with certain other provisions of his contract, and recommending that for these failures and his persistent disregard of the instructions of the architects, he be declared in default under this contract.

The Commission entered an order accordingly, and then by subsequent order entered on February 20, 1950, granted Horne thirty days from February 20, 1950 to substantially comply with his contract provided he made satisfactory day to day progress. On March 7, 1950, the Commission entered an order declaring Horne in default for unsatisfactory day to day progress, and for failure to comply with his contract, and terminating his contract, and calling upon the surety to perform the obligations of its bond. Horne demanded an arbitration in accordance with the terms of the contract and the same was had and resulted in an award in favor of the State Building Commission on April 24, 1950, finding that there was sufficient cause to warrant the Commission in declaring Horne in default and in terminating his contract. The award was filed in the circuit court and the cause involving the arbitration proceedings was later transferred to the chancery court, where it was numbered Cause No. 40,802 on the docket of that court. The chancellor confirmed the award and on appeal to the Supreme Court, the action of the chancellor was affirmed. Horne v. State Building Commission, 220 Miss. 520, 76 So. 2d 356. Thus Horne was judicially determined to be in default on his contract and the obligation of the surety to complete the contract immediately attached.

In the meantime, Horne sued the State Building Commission in the chancery court, seeking to enjoin the Commission from putting into effect the award of the arbitrators, and seeking to recover certain sums alleged to be due him under his contracts with respect to the State

Office Building and with respect to the Schools for the Blind and Deaf. This cause became Cause No. 40,695 on the docket of the chancery court, and was later consolidated with said cause No. 40,802 involving the arbitration proceedings, and the two causes are consolidated on this appeal.

Horne filed an amended bill of complaint in which he joined as defendants the State Building Commission, the architects, and his surety, Western Casualty and Surety Company, and in which he alleged that the Commission was without power or authority to terminate his contract, and sought the recovery of sums claimed to be due him under both of his contracts, and claimed actual and punitive damages for the alleged wrongful act of the Commission in declaring him in default and in terminating his contract with respect to the construction at the Schools for the Blind and Deaf. Later an order of dismissal was entered as to the architects. A general demurrer of the State Building Commission was sustained and the cause proceeded as between Horne and the Western Casualty and Surety Company.

In the meantime, the Western Casualty and Surety Company took over the contract with respect to the mechanical work at the Schools for the Blind and Deaf and completed it at large expense, as will more particularly appear hereafter from a recital of the findings of the chancellor. The surety employed Davis Plumbing Company to complete the work on a cost-plus basis. It was understood that the Davis Plumbing Company was to complete the work under the supervision of one A. F. Fisher. It was conceded by all concerned that the Davis Plumbing Company was a competent and reputable firm, and that A. F. Fisher was a competent and reputable master plumber who for approximately twenty years had been in the employment of the Davis Plumbing Company in a supervisory capacity. Horne protested the letting of the work on a cost-plus basis, but conceded the com-

petency and high reputation of both the Davis Plumbing Company and A. F. Fisher.

On March 20, 1950, the surety served notice on the State Building Commission that it held assignments of all sums due and to become due to Horne on the State Office Building project, and attached copies of such assignments, and demanded that they be recognized. The State Building Commission acknowledged the receipt of this notice and later the State Building Commission issued its requisition or warrant for the sum of $43,812.36, payable to Horne and the surety jointly, and representing the funds held by the Commission on the State Office Building contract. Horne later returned this warrant and thereafter the State Building Commission paid the amount into the registry of the court. Accompanying the payment was a copy of a letter from the State Tax Commission to the State Auditor dated February 14, 1951, notifying the auditor not to issue a warrant to Horne until payment of an income tax deficiency which had been assessed against Horne for the year 1948. Later, the State Tax Commission claimed that it had a prior claim and lien on any funds of Horne available to the amount of said taxes.

Western Casualty and Surety Company filed its answer and cross-bill to the amended bill of Horne denying all material allegations of the amended bill and demanding by cross-bill the recovery of all sums legally expended by it in the completion of the contract with respect to the construction at the Schools for the Blind and Deaf, including costs, expenses, and attorneys' fees, and that it be adjudged entitled to receive as a credit on the sums due it the funds paid into the registry of the court, and that it be decreed full recovery for all sums legally expended by it in discharging its obligations on the bonds executed in connection with the aforesaid contracts.

The trial on the merits of Cause No. 40,695 on the docket of the chancery court was deferred until the final

disposition of Cause No. 40,802 (the arbitration proceedings). This latter cause, on appeal to the Supreme Court, resulted as aforesaid in a final adjudication that Horne was in default on his contract and that his contract was properly and lawfully terminated. The fact as to Horne's default was, therefore, an established and adjudicated fact at the time Cause No. 40,695 came on for hearing on its merits in the court below, and was no longer a controversial issue. It was also not a controverted issue that Horne's bond contained the following provision:

"In event principal is in default under the contract as defined therein, surety will (a) within fifteen (15) days of termination of such default, take over and assume completion of said contract and become entitled to the payment of the balance of the contract price, or (b) pay the owner in cash the reasonable cost of completion, less the balance of the contract price including retained percentage. The cost of completion shall be fixed by taking bids from at least three responsible contractors, one chosen by the owner, one by the architects, and one by the surety. The surety will make such payment within fifteen (15) days after the cost of completion shall have been so determined."

The only controversial issues for the determination of the chancellor on the evidence were, therefore, (1) whether the surety properly exercised its election under the terms of the bond to take over and complete the contract on a cost-plus basis, and (2) the extent to which the surety was entitled to recover of Horne for its expenditures, including expenses, costs and attorneys' fees, in completing the contract.

The trial in the court below consumed three weeks and one day, during which period the chancellor heard and considered a mass of testimony and innumerable exhibits. The testimony had to do with an enormous number of items of claimed defects in Horne's work. The evi-

dence covered a wide range and consists of about 2,000 pages of testimony and approximately 180 exhibits.

At the conclusion of the evidence, the chancellor made the following findings of fact: (1) That Horne legally defaulted on his contract; (2) that the surety acted within its rights in electing to take over and complete the contract and in contracting with Davis Plumbing Company for the completion of the same on a cost-plus basis; (3) that the surety completed the contract as expeditiously and economically as the circumstances produced by Horne reasonably permitted; (4) that during the work of completion, the surety acted in compliance with instructions received from the architects; (5) that although Horne protested the action of the surety in completing the work on a cost-plus basis, he agreed that the Davis Plumbing Company was a competent and reputable plumbing firm; (6) that the State of Mississippi has a prior claim upon the funds in the registry of the court for income taxes assessed against Horne for the year 1948 in the total sum of $1728.90, including interest, and that the Western Casualty and Surety Company is entitled to the balance of said funds, less sums previously paid therefrom under orders of the court, to be credited on the sum decreed to be due the surety; (7) that the surety expended in good faith in the belief that it was liable therefor the sum of $110,035.85 in completing the contract, including the sum of $93,080.47 paid to the Davis Plumbing Company; (8) that said sum of $93,080.47 paid to the Davis Plumbing Company should be reduced by twenty-five percent thereof for items appearing on the Davis invoices not properly chargeable to Horne; (9) that in addition, the surety paid the claims of judgment creditors for materials furnished the job in the sum of $1687.22; (10) that the surety was not justified in permitting these claims to go to litigation and thereby incurring interest and costs, and that the amount for which the surety was entitled to credit was

only the sum of $1262.34; (11) that the surety properly and justifiably expended in the completion of the contract the total sum of $87,698.34, and that as against this sum it received or recovered from the State Building Commission the sum of $22,387.90, being the remainder of the balance held by the Commission under the contract for the Blind and Deaf Schools at the time of Horne's default; (12) that there should be deducted from the said total sum expended the sum of $6900 improperly included and being a charge for repairing damage resulting from a freeze for which Horne was not responsible; (13) that after making these deductions there remained an unpaid principal balance of $58,410.44 due the surety; (14) that the Western Casualty and Surety Company, under its cross-bill, was entitled to recover of Horne this balance, plus accrued interest thereon in the sum of $18,327.60, and plus a reasonable attorney's fee allowed in the sum of $12,500, or the total sum of $89,238.04, together with interest from the date of the decree.

The court further found that Horne was not entitled to recover anything by his suit and that his amended bill should be dismissed and that all costs be assessed against him.

The chancellor entered a decree in accordance with his findings. From this decree, Horne has prosecuted a direct appeal and the Western Casualty and Surety Company has prosecuted a cross-appeal, assigning as error the action of the chancellor in deducting twenty-five percent of the total amount paid Davis Plumbing Company to cover items which the chancellor deemed not to be chargeable to Horne.

The Western Casualty and Surety Company has prosecuted a direct appeal from that part of the final decree sustaining the claim of the State Tax Commission to funds in the registry of the court as a prior charge thereon to the extent of $1728.90, representing income taxes, and interest thereon, due by Horne to the State of Mississippi for the year 1948.

Also presented on this appeal is a motion of the said Western Casualty and Surety Company for the allowance of additional attorneys' fee for legal services rendered on this appeal.

There is also before us a motion filed by the State Building Commission in this Court to dismiss the appeal of the appellant Horne as to the said State Building Commission.

 ██ The appellant Horne contends, first, that the chancellor erred in sustaining the demurrer of the State Building Commission to the amended bill of complaint and in dismissing the amended bill as against the Commission. It was assigned, among other grounds of demurrer, that the State Building Commission is an agency or instrumentality of the State, created by statute, and that it is a part of the governmental function of the State and is not subject to suit in the absence of express statutory authority, and that at the time of the institution of this suit and at the time of the rendition of the decree sustaining the demurrer there was no statute authorizing suits against the Commission. We are of the opinion that the ground of the demurrer stated is well taken.

The record discloses that the original bill of complaint against the Commission was filed on June 8, 1950; that the last amended bill of complaint naming the Commission as a defendant was filed on October 1, 1955; that the decree sustaining the demurrer was rendered on October 31, 1955; that the appellant Horne petitioned for an appeal from said decree on November 2, 1955, and perfected his appeal by filing a proper appeal bond on November 19, 1955. The appellant Horne says, first, that the Commission is created by statute to act in a proprietary capacity and not as an agency of the State in the exercise of its governmental functions and is therefore amenable to suit, and, second, that during the pendency of this appeal the Legislature enacted Chapter 280 of the Laws of 1956, approved April 5, 1956, authorizing

the Commission to sue or be sued and that the decision on this appeal should be governed by the law as it now is and not by the statutes as they existed at the time of the rendition of the decree on the demurrer.

These contentions bring into review the manner in which the Commission was created and its duties, powers, and authority. At the time of the institution of this suit, the Commission was a body created by Chapter 328 of the Laws of 1944, as amended by Chapter 276 of the Laws of 1946, and Chapter 467 of the Laws of 1950. It was given broad power to erect buildings, make repairs, additions, or improvements, and buy materials, supplies and equipment, for any of the institutions of the State. By the Act of 1944, it was clothed with large discretionary powers and authority in the expenditure or allocation of any funds appropriated for expenditure under the act of its creation. We think that the erection of public buildings and the repair and improvement of the same and the buying of materials and supplies for State institutions are clearly matters pertaining to the functions of government and, therefore, governmental in nature; that the creation of the Commission for the purpose of carrying out these functions is the creation of a governmental agency. Hence, we have no difficulty in concluding that the State Building Commission as created and as it existed at the time of the institution of this suit was a governmental agency and that the rule that the State or its governmental agency cannot be sued in the absence of statutory authority applies to the State Building Commission.

Prior to the enactment of Chapters 280 of the Laws of 1956, approved April 5, 1956, there was no statute which conferred upon the State Building Commission the power and authority to sue or be sued.

██ ██ It is, of course, too well settled to admit of debate that the State or its governmental agencies is not subject to suit in the absence of statutory authority. Miss.

Centennial Exposition Co. v. Luderbach, 123 Miss. 828, 86 So. 517; State Highway Commission v. Gully, 167 Miss. 631, 145 So. 351; Miss. Livestock Sanitary Board v. Williams, 133 Miss. 98, 97 So. 523; Ayres v. Board of Trustees of Leake County Agricultural High School, 134 Miss. 363, 98 So. 847; Stone v. McKay Plumbing Company, 200 Miss. 792, 26 So. 2d 349; Smith v. Doehler Metal Furniture Co., 195 Miss. 538, 15 So. 2d 421.

In the case of Smith v. Doehler Metal Furniture Company, supra, the Court said: "That an arm or agency of the State cannot be sued except by express statutory or constitional authority has been too long and too well settled to be further debatable. . . ."

In the case of State Highway Commission v. Gully, supra, the Court said: "It is too well settled to require the citation of authority that the State Highway Commission, which is an agency of the State, is not subject to suit unless made so by statute, and that such statute, when one exists, is the measure of the power to sue such agency."

In the case of Ayres v. Board of Trustees of Leake County Agricultural High School, supra, the plaintiffs filed suit against the Board of Trustees of the Leake County Agricultural High School and the Board of Supervisors of Leake County, seeking to recover from the defendants a balance claimed to be due for lumber and material furnished under a contract entered into between the plaintiffs and the board of trustees of the school whereby they agreed to furnish certain lumber and material to be used in erecting the buildings of said school. The result of this suit insofar as the board of trustees of the Agricultural High School was concerned is as stated in one of the syllabi, as follows: "The State and its governmental subdivisions and agencies are not subject to suit unless made so, expressly or by necessary implication, by some statute, and, since an agricultural high school is an agency of the State, no suit can be maintained against it unless so authorized."

It clearly appears that there is no statutory authorization for the bringing and prosecution of this suit against the State Building Commission unless retroactive effect upon this litigation is to be given to Chapter 280 of the Laws of 1956.

It is the contention of the appellant Horne that retroactive effect upon this litigation is to be given to said Act of 1956, and in support of this contention, the appellant invokes the rule announced in the case of Stone v. McKay Plumbing Company, 200 Miss. 792, 26 So. 2d 349, and decisions of this Court in harmony therewith. This rule is concisely stated in the case of Deposit Guaranty Bank and Trust Company v. Williams, 193 Miss. 432, 9 So. 2d 638, as follows: "Many decisions in this State have affirmed the rule, which generally prevails, that the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a savings clause."

In the case of Stone v. McKay Plumbing Company, supra, the Court said: "And it is further settled in our jurisprudence that when a right of action or remedy is created solely by statute and does not exist at common law, the repeal of the statute has the same effect as had the statute never existed; or, if the statute is modified or amended the effect is the same as had the statute previously existed all the while in the same language as the amending act, unless there is a savings clause. . . . . Moreover, the effect of the rule is that it applies not only to actions already instituted, but also to any judgment rendered by the trial court under the old statute, but which judgment is covered by an appeal pending at the time of the repealing or amendatory enactment, it being the duty of the appellate court to decide the case accord-

ing to the law at the time when the matter is acted on by that court rather than on the law theretofore existing.''

██ ██ It is to be noted that in the cases just cited and quoted from, the rule announced prevails in a case where the subsequent legislative act is amendatory of or modifies a prior legislative act. · In the case before us, however, we are not dealing with a situation where the subsequent legislative act is amendatory of or modifies a prior legislative act. Chapter 280 of the Laws of 1956 is not amendatory of, nor does it modify, any prior legislative act. It is an independent act and by its very language it prescribes for the State Building Commission powers and duties ''in addition to the powers and duties otherwise prescribed by law.'' In solving the problems presented, it must therefore be determined whether or not Chapter 280 of the Laws of 1956, which is an independent act and which neither amends nor modifies a prior legislative act, is retroactive or prospective in its operation. The rule is well settled that a statute will not be given retroactive effect unless it is manifest from the language used that the legislature intended the statute to so operate. City of Lumberton v. Schrader, 176 Miss. 272, 168 So. 77.

In the case of Standard Life Insurance Co. v. Dorsey, 178 Miss. 852, 173 So. 669, it was held that ''a statute will not be construed as retroactive unless words thereof admit of no other construction or meaning and there is plain declaration therein that it is so to operate.''

We held in the case of Klass v. Continental Southern Lines, 225 Miss. 94, 82 So. 2d 705, that ''statutes are to be construed as having only a prospective and not a retroactive effect, unless the purpose and intention of the legislature to give them a retroactive operation clearly appears.''

An examination of Chapter 280 of the Laws of 1956 reveals no language susceptible of a construction that the legislature intended this act to be retroactive in its

operation. In fact, Section 19 of the Act negatives any intention on the part of the legislature to give retroactive effect to the act. This section reads: "This act shall be deemed to be full and complete authority for the exercise of the powers herein granted, but this act shall not be deemed to repeal or to be in derogation of any exising law of this State whereunder projects of the character herein defined may be constructed or financed."

Considering the plain language of the Act, the conclusion is inescapable to us that not only does it not show a clear intention on the part of the legislature to make the statute effective retroactively, but it shows a clear intention to the contrary by expressly providing that it "shall not repeal or be in derogation of any existing law of the state." It is our opinion, therefore, that the subsequent act, namely Chapter 280 of the Laws of 1956, is prospective in its effect only and has no application to this litigation which was instituted long prior to the enactment of said Chapter 280 of the Laws of 1956, and accordingly, we think the chancellor committed no error in sustaining the demurrer of the State Building Commission.

The appellant Horne further contends that on the evidence presented the trial court erred in rendering a decree against him and in favor of the surety, Western Casualty and Surety Company. While he concedes that the evidence establishes the fact that the surety expended the funds which it claims to have expended in the completion of the contract, he contends that there were many items of work charged to him for which he was not liable; that the surety was not warranted in taking over the contract and undertaking to complete the same on a cost-plus basis, and that it could have been more expeditiously and economically completed by letting a contract therefor on a lump sum basis; that the surety was improperly paid the balance remaining in the hands of the Commission on both the State Office Building project and the Schools for the Blind and Deaf project. These conten-

tions are all foreclosed by the evidence and the chancellor's findings thereon.

We shall not undertake to detail the evidence. To do so from this voluminous record would extend this opinion to too great length. It is sufficient to say that the findings of the chancellor upon which he based his decree in favor of the surety and against the appellant Horne are amply supported by the evidence. The respective rights and liabilities of the principal and his surety arise out of contractual relations. Horne was adjudicated to be in default on his contract in relation to the Schools for the Blind and Deaf project. The surety was then admittedly called upon to complete the contract. It then became the duty of the surety to take over and assume the completion of the contract or to let the same for completion. The surety elected to take over and assume the completion of the contract on a cost-plus basis, and that this was the most expeditious and economical basis on which to complete the contract is abundantly shown by the evidence and was so found by the chancellor. The evidence clearly establishes the fact that many items of defective work performed by Horne were not and could not be discovered until disclosed in the progress of the work of completion. Under the indemnity agreements contained in the applications and the bonds, the principal, Horne, became liable to the surety for all sums paid by the surety on good faith under the belief that it was liable therefor whether liable or not, including costs, expenses and attorneys' fees, and as security for the discharge of such liability, he assigned to the surety all funds due him on both projects. To support the expenditures made by the surety in completing the contract there was introduced in evidence an itemized statement, supported by vouchers, duly sworn to by an officer of the company, and the same under the indemnity agreements of the parties became prima facie evidence of the fact and extent of the principal's liability. In addition, however,

the fact that the expenditures made by the surety were made in good faith and under the belief that it was liable therefor cannot be successfully challenged under the evidence in this case. ■■■ The validity of a provision in a contract between a principal and surety imposing liability upon the principal for expenditures made by the surety on good faith has been long recognized by this Court. In the case of Guaranty Company of North America v. Pitts, 78 Miss. 837, 30 So. 758, the Court said:

"One of the conditions on which the company became guarantor for Pitts is that the voucher or receipt to it for money paid, without fraud—that is, in good faith— for him to the obligee of the bond should be conclusive of the fact of his liability to the obligee for the sum paid. In other words, if the guaranty company should, in good faith, discharge a claim by the obligee for a liability asserted against Pitts, the voucher or receipt for the payment should be proof of the liability of Pitts. There is nothing wrong or unreasonable, or against public policy, in this stipulation. Parties sui juris may lawfully make such stipulations, and are bound by them. Under such contract the company was authorized in advance, as a condition of guaranteeing, to exercise discretion as to paying any demand made by the holder of the guaranty, and was bound only to act without fraud in settling a claim, and thus paying is entitled to hold the party guaranteed for reimbursement, and the voucher proves the claim, if not shown to have been infected with fraud. The expense, delay, trouble, and risk of loss to the guaranty . company is a sufficient safe-guard against an unwarranted payment, and, without such a stipulation as complained of here, guaranty companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public . . . . . ."

Viewing this record as a whole, we are compelled to conclude that the chancellor was not manifestly wrong

in his findings of fact, upon which he based his decree against Horne, but that his findings are overwhelmingly supported by the evidence. Horne was admittedly in default on his contract. The duty of the surety to complete the contract was inescapable. The obligation of Horne to indemnify the surety as against expenditures made by the surety in good faith in completing the contract, including costs, expenses and attorneys' fees, was beyond question under the terms of the indemnity agreements between the parties. The expenditures made by the surety were large but this is accounted for by the innumerable items of defective work shown by the evidence to be required to be corrected in the completion of the contract. The appellant Horne assails the good faith of the surety in making the claimed expenditures. But it would be unreasonable to ascribe to the surety on this record a motive to make reckless and unnecessary expenditures in anticipation of undertaking to recover the same back by an action against the principal, incurring the expense and delay incident thereto.

 The surety, Western Casualty and Surety Company, has prosecuted a cross-appeal assigning as error the action of the chancellor deducting twenty-five percent of the total amount paid by the surety to Davis Plumbing Company to cover items which the chancellor deemed not to be chargeable to Horne. The evidence disclosed that there were a number of items of work performed by the surety in the completion of the contract and not required by the plans and specifications, and that there were also some materials on the job which had been left by Horne at the time of his default and the termination of his contract. The chancellor found and concluded from the evidence that these items and materials amounted to approximately twenty-five percent of the total amount paid to the Davis Plumbing Company in the completion of the contract, and he accordingly, in fixing the amount due the surety, deducted from the total

amount paid to the Davis Plumbing Company twenty-five percent thereof. After reviewing the evidence, we are unable to say that this finding of the chancellor was manifestly wrong and we are therefore of the opinion that the action of the chancellor should be affirmed on cross-appeal.

██ ██ There is further presented for our consideration and determination the direct appeal prosecuted by the Western Casualty and Surety Company from that part of the final decree sustaining the claim of the State Tax Commission to funds in the registry of the court as a prior charge thereon to the extent of $1728.90, including interest, representing income taxes due by Horne to the State of Mississippi for the year 1948. At the time of Horne's default there was in the hands of the State Building Commission the sum of $43,812.36, representing retainage funds on the State Office Building project. On March 20, 1950, the surety served notice on the State Building Commission that it held assignments of all sums due and to become due to Horne on the State Office Building project and attached copies of such assignments and demanded that they be recognized. These assignments were embraced in the application and bond on the State Office Building project, each dated January 21, 1948, and in the application and bond on the Schools for the Blind and Deaf project, each dated May 8, 1948. The State Building Commission tendered and paid into the registry of the court the aforesaid retainage funds on the State Office Building project. Filed with the tender was a copy of a letter from the State Tax Commission to the Auditor dated February 14, 1951, advising the Auditor not to issue a warrant to Horne until payment of a tax deficiency which had been assessed against Horne for the calendar year 1948. The State Tax Commission asserted a prior claim to the funds paid into the registry of the court to the extent of the income tax deficiency asserted against Horne. The chancellor sustained the claim of the State Tax Commission as a prior claim

on the funds in the registry of the court to the extent of the amount of such deficiency and this action of the chancellor is assigned as error by the surety. We think that the assignment is well founded. The claim of the State Tax Commission is based on the provisions of Section 3867, Vol. 3A Recompiled, Code of 1942, which reads as follows:

"The auditor shall not issue any warrant upon any allowance made to, or claim in favor of, any person, his agent or assignee, who shall be indebted to the state, or against whom there shall be any balance appearing in favor of the state; but he shall allow such debtor a credit on his account for such allowance or claim."

The funds which were paid into the registry of the court represented retainage funds on the State Office Building project. The income taxes assessed to Horne were for the year 1948. The application and bond on the project for the State Office Building were dated January 21, 1948, and the application and bond on the project for the Schools for the Blind and Deaf were dated May 8, 1948. The assignments to the surety became effective under the contract as of the dates of the applications and bonds. See also State for the Use of National Surety Corporation v. Malvaney, 221 Miss. 190, 72 So. 2d 424. We are of the opinion, therefore, that the rights of the surety to the funds in question became effective prior to the accrual and assessment of the income tax against Horne for the year 1948. To put the question differently, under the facts as disclosed by this record, the funds paid into the registry of the court were the property of the surety and were due to the surety under its assignments and were not due to Horne at the time of the accrual and assessment of the income tax in question. Therefore, the aforesaid Code Section 3867, in our opinion, has no application, and the decree of the court below to the extent that it adjudges the prior right of the State Tax Commission to the funds in question to the extent of the

deficiency in income tax due by Horne is in error and should be and is reversed and judgment is here rendered denying the State Tax Commission's claim to the funds in question.

There is also presented on this appeal a motion of the State Building Commission to dismiss the appeal of the appellant Horne as to the State Building Commission. In view of our conclusion heretofore expressed affirming the action of the chancellor in sustaining the demurrer of the State Building Commission to the amended bill of the appellant Horne and dismissing the suit of Horne as to the State Building Commission, the aforesaid motion has become moot and any decision thereon rendered unnecessary.

The motion of the surety for the allowance of additional attorneys' fees is sustained. Provision for the allowance of attorneys' fees to the surety is clearly provided in the indemnity agreements between the parties. Attorneys' fees in the trial court were allowed in the sum of $12,500. We are of the opinion that the surety is enitled to the allowance of an additional attorney's fee in this Court and the same is allowed in the sum of $5,000.

It follows from the views which we have expressed that this cause should be and it is affirmed on the direct appeal of the appellant Horne and on the cross-appeal of the surety, Western Casualty and Surety Company, and that the final decree below should be and it is reversed as to that part thereof sustaining the claim of the State Tax Commission to funds in the registry of the court, and judgment is here rendered denying said claim.

We are of the opinion that the appellant Horne should be and he is taxed with the appeal costs.

Affirmed on direct appeal of appellant Horne, and on cross-appeal of Western Casualty and Surety Company; reversed as to that part of the decree below allowing the State Tax Commission's claim and judgment rendered

here denying said claim; motion for additional attorneys' fees sustained.

*Roberds, P. J.,* and *Hall, Lee* and *Gillespie, JJ.,* concur.